ROBERT W. HYMAN, JR., ADM'R, ET AL.

v.

WILLIAM H. PETERS.

*Real Property—Partnership—Interest of Deceased Partner—Bill by Creditor to Compel Sale—Agency.*

1.  Real estate which is purchased and held as partnership property, is, as to the interests of the several partners, personal property.

2.  Under a contract concerning the purchase of certain lands, where one of the parties advanced the cost required for the purchase and took the title thereof to himself, agreeing to advance further sums on account of taxes and of deferred payments, while the other agreed to make no charge for buying, selling or attending to the payment of taxes, they to share equally in the net proceeds upon the sale of the property, this court holds that it was the intent of the parties to create, as between them, a joint interest in the proceeds of the land, the adventure being, in effect, a partnership transaction.

3.  The receiver of a bank to which the second party to such contract, with the assent of the representative of the first party, had assigned an interest in the proceeds of the land when sold, may maintain a bill to compel a sale and distribution of the proceeds, both of the partners being deceased.

[Opinion filed February 13, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. LOREN C. COLLINS, Judge, presiding.

On or about June 20, 1864, Edward Mott Robinson, of the city of New York, and Robert W. Hyman, who was then a real estate dealer in Chicago, entered into the following contract:

Hyman v. Peters.

" Whereas, Robert W. Hyman has purchased the undivided half of section twenty-one (21), township thirty-nine (T. 39) north, range thirteen (13), east of the third principal meridian, in Cook county, Illinois, for the joint account of himself and Edward Mott Robinson, of the city of New York, for the sum of fifteen thousand ($15,000) dollars, upon the terms of six thousand ($6,000) dollars cash down, and the residue in two equal installments of forty-five hundred dollars each, payable respectively at any time within twelve and eighteen months from the 26th day of April, 1864, according to the tenor of two certain notes of that date secured by deed of trust on said premises, it being recited therein, and in said notes, that said Hyman shall have the privilege of paying each of them at the Merchants' Savings Loan and Trust Company's Bank, in Chicago, at any time before maturity, and that interest shall cease ten days after such payment into bank ; and,

" Whereas, the said Edward Mott Robinson hath advanced to said Hyman the sum of six thousand dollars, for said cash payment, and doth take the title to said lands, subject to said deferred payments, and to make the same by way of advance, if it shall be necessary or expedient so to do hereafter, and to pay taxes thereon by way of advance.

" Now, therefore, this agreement witnesseth, and it is hereby mutually agreed by and between the said Edward Mott Robinson and the said Robert W. Hyman, as follows, to wit :

"*First.*    Said Hyman shall sell said premises within one year from the date hereof, unless otherwise agreed between the parties hereto, and shall make no charge for buying, selling or attending to the payment of taxes on the premises.

"*Second.*    Said Robinson shall advance all such moneys as may be required to pay taxes and deferred payments on said lands before sale and conveyance, so far as may be necessary so to do.

" *Third.*    Upon the sale of said premises the proceeds shall be distributed as follows:

" 1st.    Said Robinson shall be reimbursed all moneys advanced and to be advanced on said premises by him, with interest at the rate of seven per cent. per annum.

" 2d.   The balance of the proceeds of such sale shall be equally divided between the respective parties hereto.

" 3d.   An account of sales and of proceeds shall be made and rendered by said Hyman to said Robinson within ten days after such sale is made, if made by said Hyman.

" *Fourth.*   And the said Robert W. Hyman for himself, his heirs, executors, administrators and assigns, doth covenant and agree hereby, to and with the said Edward Mott Robinson, his heirs and assigns, that whenever sale is made of said premises, that he, the said Robinson, or his heirs or assigns, shall in any event be reimbursed the full amount of all advances made and to be made on said lands, with interest thereon at the rate of seven per cent. per annum.

" In witness whereof, we, the said Edward Mott Robinson and the said R. W. Hyman, hereby bind ourselves, our heirs and assigns, to the foregoing agreement, and set our hands and seals.

" NEW YORK, June 20, 1864,

" EDWARD MOTT ROBINSON,   [SEAL.]<br>
" R. W. HYMAN,   [SEAL.]

" Witness to both,

" WM. E. WATSON."

About July 14, 1865, said Robinson died in the city of New York, testate, and seized of the legal title to the premises in said agreement described.   By his will, which was duly probated, he devised said premises to Henry A. Barling, Abner H. Davis and Edward D. Mandel, trustees, to hold upon trusts in the will expressed.   On or about September 24, 1867, said trustees and said Robert W. Hyman entered into an agreement as follows :

" Whereas, Edward Mott Robinson (since deceased), and Robert W. Hyman, who were parties to the agreement of which the foregoing is a copy, did also agree that the remaining undivided half of section twenty-one (21), township thirty-nine (39) north, range thirteen (13) east of the third principal meridian, in Cook county, Illinois, should be purchased at the price of seventeen thousand and fifty ($17,050) dollars, for their joint account and benefit in all respects, on the same terms as specified in the foregoing instrument.

" And whereas, at the time such purchase was consummated, said Edward Mott Robinson had deceased and the title for said additional purchased interest of one-half of said section was at the time, namely, about the 24th day of June, 1865, conveyed to the undersigned, Henry A. Barling and Abner H. Davis, executors of Edward Mott Robinson, by whom the purchase money paid was advanced.

" Now this memorandum witnesseth, in pursuance of the agreement made between said Hyman and said Robinson in his lifetime, that the said last purchased undivided half of said section is held by the said Henry A. Barling and Abner H. Davis, as executors as aforesaid, upon like terms and conditions, so far as respects the share and interest of said Hyman in the profit or loss to result from said purchase, as the said undivided half first purchased was held by said Edward Mott Robinson under the said foregoing agreement of June 20, 1864, and said Hyman agrees in like manner as he did in respect to the first purchase, that said executors shall be reimbursed the amount of all advances they have made or shall make for or in respect of said last purchased half, with interest thereon at the rate of seven per cent. per annum."

" And it is further understood and agreed between the parties that in respect of both said parcels or undivided halves purchased as aforesaid, the executors of, or trustees under the last will and testament of Edward Mott Robinson, have a right at any time or from time to time, in their discretion, to sell the whole or any part or parts of said premises for such price as they may deem expedient, and said Hyman shall be bound by the results of such sale.

" It is further agreed, in respect of both said purchases, that if within one year from this date there shall not have been enough received from sales of said premises to reimburse said Robinson's estate for his and its advances, with interest, the executors, in making up their eventual account for reimbursement of the estate for its advances and interest, shall be entitled to state the account of advances computed with interest up to the end of a year from this date, the whole principal and interest drawing interest from that time, and so from that time

forth state the account with annual rests, adding in the ac-
crued interest, provided always that in case of a loss instead of
a profit accruing on the purchase, such annual rests shall not be
made, but simple interest only for the whole time without
rests shall be charged.

"In witness whereof, the said parties have hereunto set
their hands and seals the 24th day of September (1867)
eighteen hundred and sixty-seven.

> "HENRY B. BARLING, EX.   [SEAL.]
> "A. H. DAVIS,       EX.   [SEAL.]
> "ROBERT W. HYMAN.      [SEAL.]"

The money necessary to purchase the premises and to pay
the taxes, make fences, repair buildings upon the land, etc.,
was from time to time paid out of the estate of Robinson,
but the property was cared for and managed by Hyman until
he died, in May, 1885, he drawing on the executors for his
disbursements and rendering yearly accounts with interest
computed and balance brought down.

Hyman became indebted to the Exchange National Bank
of Norfolk, Va., in about the sum of $100,000, and while so
indebted he caused to be delivered to said bank about the
dates thereof the two writings following:

> "NEW YORK, Oct. 1, 1883.

"Messrs. John B. Whitehead, President, and Geo. M. Bain,
   Cashier, of the Exchange National Bank, Norfolk, Va.

"*Gentlemen:* As the executor of the estate of E. M. Rob-
inson, I hold with my co-executor, Abner H. Davis, title to
640 acres of land, being section 21, town of Cicero, Cook
county, Illinois, under certain agreements made by and be-
tween Mr. Robinson during his lifetime, and Mr. R. W. Hyman,
and also between the executors and Mr. R. W. Hyman.

"Mr. Hyman is, upon a sale of said property, to receive
one-half of the net profits, as provided in said agreements,
arising from such sale.

"Mr. Hyman has requested of me that whenever a sale is
made of said property after paying all taxes, liens and assess-
ments, to hold for account of your bank such sum, not ex-
ceeding $100,000, as the firm of Hyman & Dancy, Norfolk,

Va., or Dancy, Hyman & Co., New York, may be owing to your bank at the time of realizing from such sale.

"This I hereby agree to do, Mr. Hyman joining me in the same with his approval.

"Very respectfully yours,

(Signed)     "Henry A. Barling, *Executor*."

"I approve the above.

(Signed)     "R. W. Hyman."

"New York, July 5, 1884.

"Messrs. John B. Whitehead, President, and Geo. M. Bain, Jr., Cashier, of the Exchange National Bank, Norfolk, Va.

"*Gentlemen:*  As the executor of the estate of E. M. Robinson, I hold with my co-executor, Abner H. Davis, a title to 640 acres of land, being section 21, town of Cicero, Cook county, Illinois.

"Under certain agreements made by and between Mr. Robinson during his lifetime and Mr. R. W. Hyman, and also between the executor and Mr. R. W. Hyman, Mr. Hyman is, upon the sale of said property, to receive one-half of the net profits, as provided in said agreements, arising from such sale.

"Mr. Hyman has requested me that whenever a sale is made of said property, after paying all taxes, liens and assessments, to hold for account of your bank such sum, not exceeding $100,000, as may be found to be due to him.

"As Mr. R. W. Hyman, F. M. Hyman and Geo. L. Arps, comprising the firms of Hyman & Dancy, Norfolk, Va., and Dancy, Hyman & Co., New York, is now about to be dissolved, but are still owing said bank by their four several and joint notes for $25,000 each, payable twelve months after the fifth of July, 1884, without interest, this understanding is to apply to the renewal of any part or the whole of said notes from time to time, as may be agreed upon.

"This I hereby agree to, Mr. Hyman joining me in the same with his approval.

"Very respectfully yours,

"Henry A. Barling,

"for self and A. H. Davis,

"*Ex'rs.*"

"I hereby approve the above.    R. W. Hyman."

From the time of the purchase of the property Hyman had great faith in the ultimate success of the speculation, and constantly advised postponing the sale of the land, and raised the price of it very greatly from year to year, and the executors, believing his judgment to be better than their own, followed it, and acquiesced in the course which he advised. On or about May 15, 1885, said Hyman died intestate, and an administrator has been appointed for his estate.

In May, 1885, the Exchange National Bank of Norfolk, Virginia, became insolvent, and appellee was duly appointed a receiver thereof, and afterward filed his bill in the Circuit Court of Cook County, setting out the contracts and agreements heretofore set forth, and alleging that said Hyman had an equitable interest in said lands purchased under said contracts; that the title was held by the executors of said Robinson upon the trusts arising from the purchase under said contracts; that the administrator of said Hyman had not paid the balance of indebtedness due to said bank, and has taken no steps to sell the lands mentioned in said contracts; and that the executors of Robinson refused to sell the lands in execution of the trusts arising from said agreements, and that they claim to hold the lands, and not to sell them till they see fit, and that they intend to hold the lands, so as to allow the indebtedness due to them upon the transactions, increased to such an amount by the addition of compound interest as to exhaust the amount that may be obtained for said premises when finally sold. The bill prays that the amount due to the receiver may be ascertained and decreed to be due; that the amount due to said executors under and by virtue of the agreements with reference to the purchase of said lands be ascertained; that the said lands be decreed to be sold and the proceeds distributed according to the rights of the parties.

The bill makes the executors of Robinson, and the beneficiaries under his will, the administrators of Robert W. Hyman and his heirs at law, and various other persons, defendants to the bill.

The court decreed the relief prayed for, ordered the sale of the lands, the payment of the executors of Robinson of all

accruing to them under the contracts for the purchase of the lands, and from the balance of the proceeds of the sale of said lands, directed the payment of the amount found due to complainant as receiver of said Norfolk bank.

Appellants have brought the record of this court and assigned error thereon.

Messrs. PADDOCK, ALDIS & WRIGHT, for appellants.

Properly construed, the contracts show that Robert W. Hyman at no time had an interest in the land; nor was he the beneficiary of any right, trust or power whereby he could " require " it to be sold by the owners.   It necessarily follows that he could neither assign nor pledge any interest in the land; nor could he vest another party with a right to require a sale.   His function was to sell the land himself, and thereby earn the share in the profits.   Stow v. Robinson, 24 Ill. 597; Stevens v. Faucet, 24 Ill. 483; Porter v. Ewing, 24 Ill. 617; Fawcett v. Osborne, 32 Ill. 411; Smith v. Gear, 59 Ill. 386; Burton v. Goodspeed, 69 Ill. 237; LeMoyne v. Quimby, 70 Ill. 399; Robbins v. Laswell, 27 Ill. 365; Bates on Partnership, Vol. 1, Secs. 41, 43.

In cases of agency for sale, it has been held by our courts that the agent was subject to discharge, like any other employe, the principal, of course, being liable for any damage caused by the groundless termination of the agency, or any other breach of the contract.   The case of Stow v. Robinson, 24 Ill. 597, is in point.

In Porter v. Ewing, 24 Ill. 617, the land was purchased with the money of the principal, title taken in the principal's name under a contract by which the principal was to place money in the hands of the agent, who was to buy land with it in the name of the principal, and for his skill, care and trouble in the business was to have as compensation one-half the profits derived from the operations.

The Supreme Court say: "It seems to us there can be no doubt that, under this contract, Porter had and was to have no interest in the land or other property purchased with this money.   He had an interest in one-half of the profits, and in

that only. This was a mode of compensation for his services. There were no profits until the final settlement of the concern, properly speaking, unless the parties chose to treat a part of the property or its proceeds as profits and divide it as such. While the business was still in progress the value of the property might be more than the $1,000 one day and another day less. To-day there might be an apparent profit and to-morrow a loss."

In Smith v. Gear, 59 Ill. 386, Smith employed Gear to manage a farming and stock-buying business, and to buy stock with funds furnished by Smith on speculation, Gear to have one-half the net profits as compensation for his services, and Smith the other. In the course of this business, Gear purchased some promissory notes, secured by mortgage, and paid for them with funds furnished by Smith. The mortgage having been subsequently foreclosed, the mortgaged lands were struck off in the name of Smith, upon his bid. Gear filed his bill asserting an interest in the lands sold, and praying a partition of the land upon the terms of contribution, or, in the alternative, that the land should be sold, and the excess of proceeds over the cost divided equally between the parties. The court below ordered a sale of the property, and Smith appealed. The Supreme Court say: "It seems to us to be clear that, under the agreement, the land itself would belong to the appellant, and the interest of the appellee would only attach to the net profits arising upon a sale of the property. He could take no interest in the estate itself. The true construction of the agreement under which the parties were operating in stock, is, that the stock belonged to the appellant, and the only interest of the appellee was his just share of the net profits. It was purchased for him with his funds, and the appellee had no interest, unless a profit was realized upon a sale. The land was bought under a like agreement, and was held upon the same terms. The prayer of the bill, that the title to one-half of the land should be perfected to the appellee, upon the payment of the just amount that should be found due to the appellant for the purchase money and expenses advanced, was properly denied by the

Circuit Court. It would have been competent for the parties themselves to have declared the profits in lands; but this they did not do, and it is not in the power of the court to make any division of the estate and decree that any portion of it is profits. It would, in effect, be to make a new contract between the parties. Porter v. Ewing, 24 Ill. 619. The principal question that arises upon the record to be considered is whether the appellee, under the bill filed, and on the evidence taken on the hearing, was entitled to have the lands sold, and a division of the profits, if any, declared. It is insisted that it is necessary for the appellee to show by the evidence, that a profit would result from a sale in order to give the court a basis on which to rest its decree. It is a sufficient answer to this objection that it was the agreement of the parties that the land should be sold. Such was the contract in regard to the stock, and the land was purchased on the same terms."

In the case of Smith v. Gear we have an existing agency, and an agent ready and willing to go forward and complete the business of his employment in accordance with the contract. The contract was, the property "should be sold." That is the fact which distinguishes that case from the case at bar, and also from the case of Stow v. Robinson, 24 Ill., *supra.* In Smith v. Gear the court was called upon to make no new contract for the parties, but simply to compel in favor of an agent ready and willing to perform the execution of a valid and existing agreement. In the case at bar, the court of equity, in plain view of the fact that the consideration has been irrevocably lost through the death of the chosen agent, forces the principal to accept the services of its own master, in disregard of the terms of the contract. This is the precise thing which the Supreme Court refused to do in the case cited, viz., make a new contract for the parties. The thing agreed in the present case is, that, in default of sale by Hyman, the trustees may determine time of sale and price at their discretion. This right has been stripped from appellants by the decree of sale.

In Le Moyne v. Quimby, 70 Ill. 399, the Supreme Court of this State again construed an agency contract analogous to the one now under discussion. In that case land was bought

by Ricketson, the principal, under an arrangement with Tier-
nan, the agent, providing that Tiernan was to hunt up and buy
land, and that in consideration of Tiernan's services in securing
the land, if it should be sold for a specified price, Tiernan
should have one-half the net profits after deducting purchase
money, taxes, costs, expenses, and ten per cent. interest.    If
sold for less than the specified price, Tiernan was to have only
one-fourth of such net proceeds, but no sale was to be made
without Ricketson's consent, and he reserved the right to sell at
any time and for any price he might see fit.    The court will
note that when Tiernan had hunted up and bought the land, as
the contract expressed it, he had done all that was necessary to
entitle him to claim his share of the profits whenever Ricket-
son should sell the land.    Ricketson thereafter disposed of the
land by his will to his wife and daughter, who afterward
conveyed to Le Moyne.    Of the contract itself, the Supreme
Court say: "We can only regard this as a personal contract.
It gave Tiernan no title to or interest in the land.    It was an
agreement to pay Tiernan for his services in procuring the
land for Ricketson, a certain part of the profits upon a sale, in
lieu of a definite and fixed sum of money.    By this contract,
Tiernan had no control of the land or authority to sell it.    At
such time as Ricketson saw proper to sell and dispose of the
land, in the event there should be any profits, then Tiernan
should share in them.    The cross-bill and decree proceed upon
the ground that Tiernan, by the agreement, acquired an
interest in the land, and not in the proceeds to be realized
upon a sale.    This is erroneous.    Stow v. Robinson, 24 Ill.
534; Porter v. Ewing, 24 Ill. 618.    These authorities settle this
question beyond any dispute, and, although other courts may
have held otherwise, the decisions cited, *supra*, are based upon
principles so well settled that they can not be shaken."

   In the present case the owners, whose interest in the ques-
tion of profit may be supposed at least to equal in amount that
of appellee, claim a right to sell at their own discretion, as to
time not only, but as to price as well; and they seriously
object to surrender that discretion to the court or its officer.

   That appellee desires to wind up his bank is natural and
proper, but the fact affords no reason why the owners should

desire to wind up their land purchase, unless the appellee can produce their agreement covering the point.

It is reasonable to conclude, not only .that the interest of Mr. Hyman was a personal one, and confined to profits, but that, without violation of the contract, there can be no profits derived under the present decree of sale.

If it be supposed that the interests of Mr. Hyman have devolved upon his heirs or administrators, in the sense that they can take his place as agents, a succession denied in Stow v. Robinson, *supra*, that supposition falls far short of justifying the decree in this case, because there is left in the contract the same condition as to mode of sale which was put into it by the parties originally.

Conceding, for the sake of argument, that Mr. Hyman had an interest in the land as joint owner, partner or otherwise, held in trust for his benefit by the holders of the legal title, or in profits of .a sale, when made, and that his heirs, representatives or assigns might assert such interest by a proper bill, it by no means appears by the letters of Mr. Barling (the only proof on the point) that such interest was pledged to the bank.

Messrs. SMITH & PENCE, for appellee.

The agreement of June 20, 1864, between Hyman and Robinson, and the agreement of September 24, 1867, between Hyman and Robinson's executors, reciting that the land was purchased for their joint account and benefit, constituted Hyman and Robinson, and subsequently Hyman and Robinson's executors, partners in the transaction, with all the incidents of a copartnership. Nicoll v. Ogden, 29 Ill. 323, 377; Nicoll v. Miller, 37 Ill. 387; Nicoll v. Mason, 49 Ill. 358; Faulds v. Yates, 57 Ill. 416; Simpson v. Leech, 86 Ill. 286; Morrill v. Colehour, 82 Ill. 618, *supra;* Story on Part., Secs. 92 and 93, and note on pp. 150–164; Morse v. Richmond, 97 Ill. 303.

Upon the death of Hyman, the partnership existing between him and Robinson's executors was dissolved, *ipso facto.* Robinson's executors thereupon became trustees for Hyman's

representatives, and those claiming through him, and it became their duty to close up the partnership without delay. Story on Part., Sec. 317; Nelson v. Hayner, 66 Ill. 487; McKean v. Vick, 108 Ill. 373.

Where the legal title of land acquired by a firm is taken in the name of one partner, he will hold the same in trust for the interest of the several members of the partnership on final settlement of the partnership affairs. The interest of each partner will be for whatever claim he may have against the firm upon a final accounting, and after the payment of its debts and the claims of his co-partners. Railsback v. Lovejoy, 116 Ill. 442.

Mauck v. Mauck, 54 Ill. 281, was a bill in chancery by defendant in error against plaintiffs in error for an account and settlement of a partnership between defendant in error and John Mauck, the ancestor of plaintiffs in error.

There was real estate belonging to the firm, embracing three different tracts. The court found the firm to be insolvent and ordered the defendant in error to collect the outstanding debts, and sell the real estate at either public or private sale.

It was assigned as error that the court decreed the sale of real estate at private sale.

"We now come to consider the question whether the court had power to license the surviving partner to sell the real estate purchased by the firm, and held jointly by them, at private sale, or, if the power was possessed by a court of equity, it was properly exercised in this case. Taking the facts found by the court to be true, * * * it is apparent that a sale of the realty was necessary and eminently proper, to pay the debts due from an insolvent firm. * * *

"The question presented is purely one of power in the chancellor to decree such a sale. We have been referred to no authority which denies or questions the power, nor are we aware that any such can be found, and, in the absence of adjudged cases, we must test the act by general principles. Equity has the undoubted right to compel one person to convey land to another, when equity and good conscience

Hyman v. Peters.

require it; or it may cancel deeds or enjoin the assertion of title. In truth, equity may avail itself of a variety of means or instrumentalities for the purpose of doing complete justice.

"Again, this was firm property, purchased and held as such. This being so, in equity it partakes of the character of personalty, and was, in many respects, free from the incidents of realty. Nicoll v. Ogden, 29 Ill. 323. Being purchased and held for firm purposes, it partook of the character of personalty to the extent that it was under the control of the chancellor in making a final adjustment of the affairs of the partnership, whether in stating an account between the partners or in marshaling the assets among creditors. Being impressed with the character of partnership assets, we are inclined to hold that the court below might intrust the surviving partner with the discretion of selling the property at public or private sale."

In the present case the court did not follow the course pursued in Mauck v. Mauck, but framed its decree in accordance with Smith v. Gear, *supra*. It found that a reasonable time had elapsed. It first adjusted "the equities between the parties as to the amounts respectively due to each of them for money advanced in regard to the purchase and other expenses for the benefit of the enterprise;" it provided that the property should not be "sold unless when offered it would bring more" than the amount due to the appellants, and reserved the entry of an order of distribution until the coming in of the report of sale. The administrator, being the legal representative of Hyman, and his heirs, were parties to the suit. The heirs were proper, but not necessary parties. Neither the administrator nor the heirs complain of the decree.

The complaint comes from the other side. Mrs. Green and her trustees claim that they may hold this land until they see fit to sell. They say, in other words, that they are content to let their credit grow and gain as against the land until the rights of others shall have been destroyed.

This proceeding is analogous to that of an execution creditor of an individual partner who levies and files a bill in aid. Story on Part., Secs. 260–263, and notes; Newhall v. Buckingham, 14 Ill. 405.

Bates on Partnership, Sec. 927, says: "An assignee or purchaser of the interest of a partner, can have a bill for an accounting against the remaining partners if they refuse to render an account. A mortgagee of the interest of the one partner may, in his action to foreclose, also ask an accounting to determine his mortgagor's interest in the firm, instead of foreclosing first and instituting another suit for an accounting, though he be the assignee holding the interest as security only. So of the assignee of an assignee. That an assignor can not also be a party, has been held." Citing Strong v. Clawson, 10 Ill. 346, and other cases.

"Although a partner can not, by transferring his share, force a new partner on the other members of the firm without their consent, there is nothing to prevent a partner from assigning or mortgaging his share without consulting his co-partners; and if a partner does assign or mortgage his share, he thereby confers upon the assignee or mortgagee a right to payment of what, upon taking the accounts of the partnership, may be due to the assignor or mortgagor." Lindley on Partnership, Ed. 1888, p. 364.

MORAN, J. The principal contention arises on the construction of the contracts between Robert W. Hyman and Robinson, and between said Hyman and Robinson's executors, set out in the statement of facts. Appellants maintained that the contracts show that said Hyman had no interest in the land, and that he was not the beneficiary of any right or trust therein; that he did not contribute or undertake to contribute anything toward the capital invested, nor to pay any part of the expenses or losses that might attend the enterprise. His only function with reference to the land, it is said, was that of agent. He was to use his skill and judgment in selling the land. If he sold the land he would be paid for his services by a share of the profits after Robinson should be reimbursed for all advances; until he did sell the land, he had no claim for his services, and the services contracted for being personal, and Hyman having died, the sale could not be made by another, as that would not be giving to the principal the skill and experience for which he contracted.

It is sought to govern this case by Stow v. Robinson, 24 Ill. 532.   The contract in that case recited that Robinson had purchased the land, and that it was to be subdivided, and that Rattray should sell the same as soon as practicable at his own expense, and after Robinson had received from the proceeds of the sale the money paid for the land, with the interest thereon, the balance arising from such sale was to be equally divided between Robinson and Rattray.   Rattray died before completing the sale of the land, and it was held by the Supreme Court that by the terms of the agreement Rattray had engaged to sell all the land, and the value of his services in doing so was to be measured by one-half the profits, and that as he had failed to completely perform the contract, a specific performance of it would not be decreed against Robinson at the suit of Rattray's heir at law.   It is very clear that by the contract Rattray acquired no interest in the land itself.   The parties to the contract had no such intention. This is not true of the contract in this case, as we construe it. The first contract between Hyman and Robinson recites that Hyman has purchased the undivided half of section 21 for the joint account of himself and Robinson, and the evidence shows that Hyman had taken the title in his own name.

To carry out this adventure for joint account that had been entered upon, Robinson advances the cash and "doth take the title to said land," and agrees to advance such further moneys as may be required to pay taxes and deferred payments until the lands shall be sold.   Hyman agrees to make no charges for buying, selling or attending to payment of taxes, and covenants for himself and his heirs that whenever the premises shall be sold said Robinson shall in any event be reimbursed the full amount of all advances made on said lands, with interest.

Hyman agrees to sell the land within one year, unless otherwise agreed between the parties; but we think it very clear that it was contemplated that sales might be made by Robinson, and in the second contract it is expressly provided that sales might be made by the trustees; and by the terms of both contracts, upon the sale of the premises, by whoever made,

half of the proceeds over and above the amount necessary to reimburse Robinson or his estate should come to Hyman.

It was, in our opinion, the manifest intent of the parties to these contracts to create, as between them, a joint interest in the proceeds of the land, and that the legal title was taken and held by Robinson and his trustees with that intention and upon that trust. The adventure was, in essence and effect, a partnership transaction, and though the stock in trade was real estate, it was as to the interests of the several parties, personal property. Nicoll v. Ogden, 29 Ill. 323.

An authority very much in point for construing the contracts in question as partnership transactions in land, is found in Seymour v. Freer, 8 Wall. 202, cited by counsel for appellee. The case under consideration, we think, furnishes clearer ground for the application of the doctrine, for the reason that there it had to be implied from the whole contract that the purchase of the lands was on joint account, while here it is declared by the parties in express terms that such is the motive of the transactions.

We think that the receiver of the bank had, under the evidence in the record, a standing in a court of equity to compel the sale of the lands, and that the decree *nisi*, etc., of the Circuit Court in ordering the sale of the lands and the payment of the debt due from the estate of Hyman to the bank out of the portion of the proceeds that remained after satisfying the claims of Robinson's estate, in accordance with the contracts, was correct, and the same will therefore be affirmed.

*Judgment affirmed.*