## McPHERSON v. SWIFT et al.

Defendant and decedent contracted that decedent should purchase land with defendant's money for $18,500 for their joint account, and decedent was to receive for his services in looking after the property one-half of the net profits after deducting 8 per cent. interest on the price, and, in consideration of decedent's agreeing to pay one-half of any ultimate loss that might occur, he was to receive one-half of the ultimate profits accruing. Each party was to pay one-half of all costs upon the property. **Held,** that decedent was not a mere employe whose employment ceased upon his death, but the contract created a partnership within Rev. Civ. Code, § 1723, providing that a partnership is the association of two or more persons for the purpose of carrying on business together and dividing its profits between them, and decedent's interest upon his death passed to his administrator.

The real estate purchased would be regarded as personal property as respects the partners' interests.

The relations of partners are confidential, and they are trustees for each other within chapter 1 of the title on trusts.

Under the express provisions of Rev. Civ. Code, § 1701, on the death of a partner, the surviving partners succeed to all the firm property in trust for the purposes of liquidation, even though the deceased partner was appointed by agreement sole liquidator, and the interest of decedent in the ultimate distribution of the partnership assets passes to whose who succeed to his other personal property.

It is not the province of an appellate court to make findings of fact, though the evidence may clearly warrant them.

It is error for the trial court to refuse or fail to find upon any material issue of fact, but such refusal or failure will not be ground for reversal where not prejudicial to any substantial right; Rev. Civ. Code, § 2431; declaring that the law neither does nor require idle acts.

Notwithstanding a former action was upon the same claim or demand, it is not a bar to a subsequent action, unless the former decree was rendered on the merits.

A voluntary dismissal of an action by plaintiff is not a decision on the merits, especially if expressed to be without prejudice.

Though parol or other extrinsic evidence is not admissible to vary or contradict a judicial record, where the record does not on its face show the precise question determined, or leaves any matter open to doubt, parol or other extrinsic evidence not in conflict with the record is admissible to aid and explain it by showing the precise questions determined, or that certain questions were not passed upon.

A retraxit at common law was a voluntary acknowledgment that plaintiff had no cause of action, and would not proceed further, made by him in person in open court.

Where a return to an order to show cause why defendant should not be allowed to withdraw certain paragraphs from his answer,

which prayed for the discharge of the order to show cause and for the dismissal of the complaint, though verified, was not shown by the record to have been filed by plaintiff, and did not acknowledge that plaintiff had no cause of action, but impliedly asserted its existence, it was not sufficient to operate as a retraxit.

Where plaintiff, in an action for an accounting of partnership property, offered to pay a sum in consideration of having his claim to the property recognized, and tendered the amount, but the offer or tender was not essential to his cause of action, his withdrawal of the offer long after it had been refused was not a renunciation of his right to insist upon an accounting.

Where plaintiff, in an action for a firm accounting, upon defendants offer to withdraw his prayer for affirmative relief and submit to a decree in plaintiff's favor on such terms as might be just, declined to accept the offer and had his complaint dismissed, defendant not having pleaded a counterclaim, plaintiff was not estopped by the decree of dismissal from maintaining another action for the same relief.

Failure to prosecute an action for an accounting for partnership property until nearly 10 years after the death of a partner was not such laches as to preclude recovery when defendant was not prejudiced thereby; he having the possession of the property and its proceeds during the interval.

An action in equity to ascertain and recover a deceased partner's interest in the ultimate distribution of partnership assets is not an action on a contract barred after six years by the provisions of Rev Code Civ. Proc. § 60, subd. 1, nor is it an action for the recovery of possession of real property based on adverse possession or payment of taxes under color of title, since partnership real property as between a partner and the successor of a deceased partner must be regarded as personal property, but it is an action for relief not specially provided for, and must be commenced within ten years after the cause of action accrued, as expressly provided by Rev. Code Civ. Proc. § 66.

A cause of action accrues when the person owning it first has a legal right to sue on it.

When the right of action to sue for the settlement of partnership affairs accrues, so as to set the statute of limitations in motion, depends upon circumstances, and it cannot be held as a matter of law to arise at the date of the dissolution or to be carried back by relation to that date.

Upon the death of a partner January, 1891, defendant, the surviving partner, appointed an agent to care for the partnership property, and claimed the whole property as his own. An administrator was appointed for the deceased partner June 1, 1892, and he sold decedent's interest in the partnership to plaintiff, who did not appear to have had knowledge of defendant's claim. **Held,** that prior to the appointment of the administrator there was no representative of the estate who could demand a settlement or to whom notice of defend-

ant's claim could have been given, and a right of action did not accrue nor the statute of limitations commence to run before that time, and an action begun within 10 years thereafter was not barred.

(Opinion filed, April 9, 1908.)

Appeal from Circuit Court, Lawrence County. Hon. LEVI McGEE, Judge.

Action by Donald A. McPherson against Joseph Swift and another. Judgment for defendants, and plaintiff appeals. Reversed.

*Martin & Mason, Chambers Kellar,* and *Jas. G. Stanley,* for appellant.

Where lands have been purchased under an agreement that they should be paid for by one party and title taken in his name, the transaction is a partnership. Hymen v. Peters, 30 Ill. App. Rep. 134; Pennypacker v. Leary, 21 N. W. Rep. 575; Hayes v. Vogle, 14 Daly 486. Our statute contemplates a partnership in real property. Comp. Laws, Sec. 4035, 4027, 2693. It is sufficient to create the partnership relation that profits to be ultimately divided between the parties were contemplated from the joint enterprise. Beauregard v. Case, 91 U. S. 140; Comp. Laws, Sec. 4027. Partners are trustees for each other. Comp. Laws. Sec. 4036. If the parties are not in strict sense partners the contract nevertheless creates a trust relation between them enforcible by the administrator or his assignee. Ellsworth v. Mace, 33 Ind. 73; Seymour v. Freer, 8 Wall 202; 1 Perry on Trusts, Sec. 95-6; Green v. Brooks, 32 Pac. Rep. 849, (Cal.) ; Bates v. Wilson, 24 Pac. Rep. 99, (Colo.) Before a prior judgment can operate conclusively as to a subsequent action, the matter in issue must have been determined upon the merits, and a judgment for costs amounting to no more than a non-suit, is not sufficient to constitute a bar. Taylor v. Neys, 11 S. D. 605; Haws v. Tiernan, 53 Pa. st. 192; Delany v. Reade, 4 Iowa 292; Bridge v. Sumner, 1 Pick. 371; Harrison v. Wood, 2 Duer. 50; Howes v. Austin, 35 Ill. 396; Taylor v. Larkin, 12 Mo. 65; Black on judgments, Vol. 2, Sec. 723; Freeman on Judgments, Secs. 260-61; Dewey v. Feiler, 11 S. D. 632; Pitts v. Oliver, 13 S. D. 561; Washington Packet Co., v. Sickles (U. S.) 5 Wall 580. A retraxit is not the dismissal by the plaintiff of his declaration or bill of complaint, as exists in the case

at bar, but is an open and voluntary renunciation in open court by the plaintiff that he has no cause of action. Coffman v. Brown, 45 Am. Dec. 300; Westbay v. Gray, 48 Cal. 800; Hallack v. Loft, 34 Pac. 570. Moreover, Swift by his conduct toward McPherson in inducing McPherson to execute this deed and inducing him to believe that there was no further controversy as to his interest in the property is estopped either by the recitals in the deed or by his conduct from now claiming adverse possession and occupancy for ten years or from setting up the defense of the statute of limitations. 11 Am. & Eng. Ency. 400; 11 Am. & Eng. Ency. 436-440; Shelby v. Bowden, 16 S. D. 531 at 545; Fort v. Allen, 110 N. Car. 183-191. An offer to purchase on the part of one claiming adversely is a clear recognition of the title in the other which bars the running of the statute. 1 Am. & Eng. Ency. Law 272; Railroad Co. v. Meade, 63 Cal. 112; Tyler "Ejectment" 921; Lovell v. Frost, 44 Cal. 471; McMahill v. Torrence, 45 N. E. 269. The statute of limitations is not applicable to an express trust unless there is a disclaimer and disavowel by the trustee which is fully and unequivocally made known to the beneficiary. 1st Am. & Eng. Ency. 2d Ed. 812; Seymour v. Freer, 8 Wall. 202 (U. S.); Oliver v. Piatt, 3 Howard, 333 (U. S.); Janes v. Throckmorter, 57 Cal. 368; McClure v. Colyer, 80 Cal. 378. The correct rule is that laches cannot be invoked unless the party invoking the doctrine has been injured or important evidence in his behalf has been lost by reason of the delay of the plaintiff. Merritt v. Bank, 19 Sup. Ct. Rep. 360; Old Colony Co. v. DuBuque Co. 89 Fed. 807; Hamilton v. Dudley, 29 Pac. 772.

*Edwin Van Cise* and *Frank J. Grant,* for respondents.

The acts and declarations of the plaintiff in procuring the decree of February 22, 1896, in the former suit, estop him from maintaining this action for the same relief he sought in that, and which he there asked and induced the court to deny. Humpfner v. Osborne & Co., 2 S. D. 310; Davis v. Wakelee, 156 U. S. 689; Robb v. Vos, 155 U. S. 13; 7 Enc. of Pl. & Pr. 364. A retraxit is a voluntary acknowledgment that the plaintiff has no cause of action, and therefore will not proceed further. 18 Enc. of Pl. & Pr. 898. A dismissal of an action by agreement without reserva-

tion of the right to sue again is treated as equivalent in its effect, to a retraxit. 1 Freeman on Judgments, 4th Ed. 478. Merritt v. Campbell; 47 Cal. 542; Crossman v. Davis, 79 Cal. 603; U. S. v. Parker, 120 U. S. 89; N. C. etc. R. R. Co. v. U. S., 113 U. S. 261; Philpott v. Blaisdell, 10 Nev. 19; Plummer v. Dougall, 14 Iowa 69; Ford v. Roberts, 14 Colo. 291. This was not a nonsuit, or a dismissal without prejudice; but a hearing and adjudication on the merits, and as such bars the present action. Lyons v. Manfg. Co., 125 U. S. 698; Borrowscale v. Tuttle, 5 Allen 177. Schulmeister v. Blendon, 86 N. W. 237; May v. Gulliman, Admx., 105 Ill. 272; Scully v. C. B. & Q. R. R. Co., 46 Iowa 528; Ogsbury v. La Farge, 2 N. Y. 113; Edgar v. Buck, 32 N. W. 644; Foote v. Gibbs, 1 Gray 412; Williams v. Hollingsworth, 5 Lea, 358; Taylor v. Yarborough, 13 Gratt., 183; Baker v. Cummings, 181 U. S. 117; Leary v. Long, 103 U. S. —; 26 L. Ed. 301; 2 Story's Equity Juris. sec. 1523; In Lyon v. The P. & G. Manfg. Co., 125 U. S. 698. Where there are several defenses, any one of which is sufficient to defeat the action, and the court or jury find especially in favor of defendant upon all of them, each becomes *res judicata,* and the judgment is upon the merits, although some of the defenses are in the nature of pleas in abatement, and go only to defeat the present action. 1 Freeman on Judgments, 4th Ed. sec. 276 a; 420 Min. Co. v. Bullion M. Co., 3 Saw. 634; Haws v. C. C. Water Co., 5 Sawy. 287; Sheldon v. Edwards, 35 N. Y. 286; Mix v. People, 116 Ill. 265; Atty. Gen'l v. Chic. R. R. Co., 112 Ill. 520; Harmon v. Auditor, 123 Ill. 122; Bassett v. Conn. R. R. Co., 150 Mass. 178; Hoyle v. Farquharson, 80 Mo. 377; Florida Ry. Co. v. Schutt, 113 U. S. 118. In cases of implied and constructive trusts the ordinary statutes of limitation apply; that in cases of express and continuing trusts, the statute begins to run from the time of repudiation and notice. Patterson v. Hewitt, 196 U. S. 309; Philippi v. Philippi, 115 U. S. 151; Speidel v. Henrici, 120 U. S. 377; City v. Lewis, 79 Fed. 709, 814; 28 Am. & Eng. Enc. Law, 1134. Laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced,— an inequity founded upon some change in the condition or relations of the property or the parties. Galliher v. Caldwell, 145 U. S. 368,

373; Ward v. Sherman, 192 U. S. 168, 177; Joseph v. Davenport, 116 Iowa 268; Kinney v. Min. Co., 4 Sawy. 382; Kline v. Vogel, 90 Mo. 239; Power v. Larrabee, (N. D.) 57 N. W. 789; Cornell v. Newkirk, 33 N. E. 37.

HANEY, P. J.   This is an action wherein the plaintiff demands that he be adjudged to be the owner of an undivided one-half interest in certain real property situate in Lawrence county; that his title thereto be quieted and confirmed; that an accounting be had; that he have judgment against defendant Swift for whatever sum shall be found due; that the property be partitioned; that defendant Coe be restrained from paying rents and profits to defendant Swift pending the litigation; and that he have such other and further relief as may be just and equitable.   He alleges in his complaint that on May 14, 1888, defendant Swift and one James K. P. Miller entered into the following written contract: "This contract, between Joseph Swift, of Essex county, state of New Jersey, party of the first part, and James K. P. Miller, of Deadwood, Lawrence county, Dakota, party of the second part, witnesseth:   That, whereas, the said party of the second part has purchased for the said party of the first part, and for joint account, the property situated in the city of Deadwood, Lawrence county, D. T., known as the Hawkeye mineral claim, comprising U. S. mineral claims numbered forty-five and fifty-three, excepting certain portions not deeded to said Swift as shown from his deed from Veymeyer on record at register of deeds office, Lawrence county, D. T.   And in consideration of the said party of the second part looking after said property, collecting the rents, attending to all the necessary repairs, paying taxes, insurance, etc., the said party of the first part agrees that the said party of the second part shall receive for said services one-half of all the net profits from said property, first deducting from said profits eight per cent. per annum interest on the $18,500.00 paid therefor.   The said party of the second part to remit to the said party of the first part monthly, or as fast as collected, the said interest and his half of the profits; and, furthermore, in consideration of the said party of the second part agreeing to pay to the said party of the first part one-half of any ultimate loss that may occur on said purchase price of $18,-

500.00, the said party of the first part agrees that the said party of the second part shall receive one-half of the profits ultimately accruing from the sale of said property above the said purchase price of $18,500.00. The said party of the second part agrees that in case there be no income on the investment, owing to the property lying vacant of tenants at any time, to settle with and remit to the said party of the first part at least once each six months, eight per cent. interest on one-half of the said purchase price of $18,500.00. Each party hereto pays in cash when due one-half of all costs upon said property, for taxes, insurance, repairs, or other necessary expenses. All money realized from sales of any part of said property shall be remitted to said party of the first part, and credited upon said sum of $18,500.00 purchase money, in liquidation thereof and stopping the eight per cent. interest to extent of such credits. Additional investments for improvements subject to same conditions." He also alleges, in substance, that Miller died January 12, 1891, having property in Lawrence county; that William Selbie, of Deadwood, was appointed administrator with will annexed of the Miller estate by the county court of Lawrence county, May 23, 1892; that Selbie qualified and entered upon the discharge of his duties; that Miller's estate was insolvent, owing debts to an amount exceeding $100,000; that it became necessary to sell the real property belonging to the estate, including the property in controversy, in order to pay debts owing by the estate; that on September 29, 1892, pursuant to an order of the county court, Selbie, as administrator, sold, assigned, and transferred to the plaintiff all the right, title, and interest of the Miller estate in and to the aforesaid contract, and in and to the premises therein described, and on January 11, 1893, by deed, duly acknowledged and delivered, transferred and conveyed to the plaintiff all the interest of such estate in and to said contract and the premises therein described; that such sale was confirmed by the county court December 29, 1892; that the consideration paid by the plaintiff for such transfer was the sum of $5,005; that Miller performed all the conditions of the aforesaid contract on his part; that the property was, in fact, purchased by Miller, Swift furnishing the money with which to pay for the same; that since Miller's death

defendant Coe, as agent of defendant Swift, has been collecting the rents, issues, and income of the property, and paying the same to Swift, less certain commissions; that Swift is not a resident of this state; that, when the property was purchased, title was taken in Swift's name in accordance with the aforesaid contract for the joint interest and benefit of Miller and Swift; that the rents, issues, and income received by Swift have been more than sufficient to pay for all repairs, taxes, insurance, and other expenses properly chargeable to the premises, together with $18,500, the original purchase price, and interest thereon as provided in the contract, and that there is a balance due to the plaintiff; that on July 22, 1892, Selbie, as administrator, notified Swift in writing that the Miller estate claimed an interest in the property, and that he would care for it, and account for rents and profits agreeably to the terms of the contract; and that prior to the commencement of this action plaintiff demanded of Swift a conveyance of an undivided one-half interest in the property described in the contract remaining unsold and an accounting, with which demand Swift refused to comply.

The cause was tried without a jury on the issues presented by the complaint and defendant Swift's separate answer; defendant Coe having been connected with the controversy only as the former's agent. Swift's answer is very voluminous, containing so many conclusions of law, arguments, and unnecessary repetitions as to render an accurate statement of the issues somewhat difficult. It will be construed as denying all the material allegations of the complaint, except those relating to the execution of the contract between Miller and Swift, the death of Miller, the insolvency of his estate, the notice and offer of the administrator, the plaintiff's demand for a conveyance, and an accounting, and the collection by Swift of rents, issues, and income subsesquent to Miller's death; and as alleging the following affirmative defenses: (1) Estoppel by conduct; (2) bar by retraxit; (3) res judicata; (4) general statute of limitations; (5) special statute of limitations; and (6) laches. It contains numerous allegations concerning the fraudulent procurement of the contract between Miller and Swift, but, as no evidence was offered in support of such allegations, they require no further

notice.   It also alleges, in substance, that the property described in
the complaint was bequeathed by Miller to Swift and two other per-
sons in trust for the purposes mentioned in the former's last will and
testament.

It is contended the trial court's decision does not cover all the
issues of fact presented by the pleadings, to the manifest prejudice
of the plaintiff; the execution of the contract between Miller and
Swift is established.   When it was executed, legal title to the
realty was in Swift.   "Thenceforward," as found by the circuit
court, "Miller collected the rents on this real property and account-
ed to Swift therefor, and for sundry improvements made on the
property, and for a sale of some portion thereof, in accordance with
the terms of the contract, until Miller's death, January 12, 1891."
In other words, Miller performed his obligations under the con-
tract while living.   He was not merely an employe, whose employ-
ment was terminated by his death.   The execution of the contract
created a partnership or a joint venture, which was in essence and
effect a partnership transaction, and, though the stock in trade
was real estate, it was, as to the interests of the parties, to be re-
garded as personal property.   Rev. Civ. Code, § 1723; Hyman v.
Peters, 30 Ill. App. 134; Brady v. Kreuger, 8 S. D. 464, 66 N. W.
1083; Betts v. Letcher, 1 S. D. 182, 46 N. W. 193.   The parties
were to share in the profits and losses, each was to pay one-half
of the expenses, and each had authority to bind the other in mat-
ters relating to the property.   The compensation for Miller's serv-
ices depended solely upon the ultimate success of the enterprise.
The property of a partnership consists of all that is contributed to
the common stock at the formation of the partnership, and of all
that is subsequently acquired thereby.   The interest of each mem-
ber of a partnership extends to every portion of its property.   The
relations of partners are confidential.   They are trustees for each
other within the meaning of chapter 1 of the title on trusts.   On
the death of a partner the surviving partners succeed to all the
partnership property, whether real or personal, in trust for the
purposes of liquidation, even though the deceased was appointed
by agreement sole liquidator; and the interest of the deceased in
the ultimate distribution of the partnership assets passes to those

who succeed to his other personal property. Rev. Civ. Code, §§ 1726, 1727, 1732, 1761. So, from the undisputed facts, it necessarily follows that at the time of his death Miller had an interest in the property which he could not have bequeathed to any one in trust or otherwise, to the exclusion of the creditors of his estate, and that such interest passed to his administrator for the benefit of his individual creditors. As to whether this interest was transferred to the plaintiff pursuant to an order of the county court the decision of the circuit court is silent. Manifestly the acquisition of Miller's interest is an essential element of plaintiff's alleged cause of action. It is not the province of this court to make findings of fact in causes heard on appeal, though the evidence would clearly warrant them. It is error for a trial court to refuse or fail to find upon any material issue of fact. Taylor v. Vandenberg, 15 S. D. 480, 90 N. W. 142; McKenna v. Whittaker, 9 S. D. 442, 69 N. W. 587. Nevertheless such refusal or failure may not be ground for reversal because not prejudicial to any substantial right. When the existence of the omitted finding would not change the ultimate result—as where a complete affirmative defense is established—failure to find some fact essential to the plaintiff's cause of action will not justify a reversal. "The law neither does nor requires idle acts." Rev. Civ. Code, § 2431. If, in this case, the plaintiff's alleged cause of action be barred by the statute of limitations, or if, by reason of any other properly established fact, it clearly appears that he would in no event be entitled to recover, it would be absurd to order a new trial. Therefore, the judgment of the circuit court must be reversed, unless it shall clearly appear that the plaintiff is precluded from obtaining any relief by reason of one or more of the alleged affirmative defenses.

The defenses of estoppel by conduct, bar by retraxit, and res adjudicata rest upon the record of a former action instituted May 20, 1893, wherein the plaintiff in this case was plaintiff and defendant Swift was defendant, and wherein substantially the same cause of action was alleged and the same relief sought as in the present action; such record being made a part of the circuit court's findings of fact. It was also alleged by the plaintiff in the former action that prior to its commencement he tendered to the defendant

$9,250, as the sum apparently due from the former to the latter in order to entitle the former to the full benefits of the contract; that prior to the commencement of the action he tendered to the defendant a quitclaim deed to an undivided one-half interest in the property described in the contract then remaining unsold; that he demanded a conveyance of an undivided one-half interest in the property; that the sum so tendered was deposited in a bank subject to defendant's order; that defendant refused to accept such tender, or to convey an interest in the property as requested. It was alleged that this tender and demand was in writing. The complaint in the former action also contained an offer to bring the sum previously tendered into court and a sum sufficient to pay one-half of any taxes or expenses paid by the defendant, or any other sums found to be due the defendant under the contract, and to produce a quitclaim deed to an undivided one-half interest in the property. Subsequently the cause was removed to the United States Circuit Court on defendant's motion, where a demurrer to the complaint was overruled, and the defendant answered, admitting certain allegations of the complaint, denying others, and alleging certain affirmative defenses. Plaintiff's replication was filed August 6, 1894. On September 26, 1895, the defendant filed a verified petition reciting the history of the litigation, and alleging "that this suit has now been pending over two years and four months; that this defendant is exceedingly anxious to dispose of it; that he has made frequent overtures and offers to the plaintiff and his solicitors to settle the same by admitting plaintiff to a joint interest or ownership in the property described in the amended bill of complaint upon his accounting equitably to this defendant for the moneys expended, in the purchase, protection, and improvement thereof, and your petitioner now renews this offer, and 'respectfully asks leave of this honorable court to withdraw from his answer now on the files of this court those portions thereof numbered paragraphs 13 and 14, pleaded as affirmative defense, and to submit to a decree in plaintiff's favor on such terms as may to this honorable court be found equitable and just." Upon this petition an order to show cause was issued "why defendant should not be allowed to withdraw from his answer paragraphs 13 and

14 thereof, and this cause be referred to the master in chancery of this court, or some special master to be agreed upon between the parties, to take testimony, and make an accounting between the parties to this suit, touching the real property in controversy and the moneys paid out by defendant on account thereof and interest thereon, and the rents, revenues, and returns received by defendant therefrom, and report the same to this court, or such other order be made in the premises as may be meet and according to equity."

On February 22, 1896, plaintiff's solicitors moved to dismiss the complaint, and on the same day the following affidavit was filed in answer to the order to show cause: "Donald A. McPherson, the complainant in the above-entitled cause, being duly sworn, says in answer to the petition of the defendant attached to the order to show cause herein that he has moved this honorable court to dismiss the bill of complaint herein, and desires to have such bill of complaint dismissed, for the following, among other, reasons: The offer and tender of the purchase price for the property involved in this controversy was long since withdrawn by affiant, and was so withdrawn before the procurement of said order to show cause. When the tender was made to the defendant by affiant's direction, the property in controversy was of very considerable value, so much so that if affiant's demand had been complied with by the defendant, as it ought to have been at the time of such tender and affiant given an interest in said property, it could have been sold for a sum which would have realized the price which affiant was willing to pay therefor, and a considerable profit in addition, but the defendant refused to accept the tender, and refused to give affiant any interest whatever in said property, and refused to carry out such contract, and denied that plaintiff was entitled to any interest whatever in said contract. Affiant further says that afterward, and before the order to show cause was procured in this case, the property in controversy was very much depreciated in value, and would not have sold and will not now sell, and is not worth in the market near the amount which affiant was willing to pay therefor. Therefore, defendant having declined to receive the tender or to give affiant any interest in said property what-

ever, denying to him any right to dispose of the same and refusing himself to dispose of it, or any portion of it, this affiant did not deem it incumbent upon him to leave so large an amount of money idle, nor did he feel himself bound in any wise to make another tender, or to pay the price which he was willing to pay therefor while said property was of value. Affiant further says that the only offer which the defendant has ever made to this affiant to accept this affiant as a co-owner in said property, or to carry out the contract set out in the bill of complaint in this cause, has been accompanied by so gross and unreasonable an account for expenditures in caring for the property as to indicate to affiant that, if he becomes a co-owner with the defendant in the title of the property, he would be constantly harrassed by unjust and outrageous claims made as pretended expenditures for the care of said property and the collection of the income therefrom. Affiant further says that the account which was handed to affiant by the agents of said defendant contained charges amounting to $6,182.07 for the collection of rents upon said property amounting to $5,841.86, and containing other like charges for pretended expenditures, which satisfied this affiant that under no circumstances which could be seen and understood by affiant would it be possible to escape constant annoyance, litigation, and loss by becoming a part owner of said property with the defendant. Affiant further says that defendant himself, subsequent to his account being handed to affiant, admitted to affiant and stated that there was $1,000 or $2,000 of charges in the account which undoubtedly were incorrect and wrong. Affiant further says that at no time has the defendant tendered or offered to execute and deliver to this affiant any conveyance to the one-half interest in said property, or for any portion thereof, or to give him any reasonable information, or to exhibit to him any vouchers for any expenditures which he has made with reference to said property. Affiant further says that the contract set out in the bill of complaint does not require this affiant to pay any part of the purchase money for said property, but the same is to be paid at affiant's option out of the proceeds of the sales thereof. Affiant was willing at the time nevertheless to pay

all that the said Miller could possibly be under obligations to pay at any time, and take the title to himself of his share of the property, to the end that it might be disposed of while the ruling and market rates of said property were of the character which affiant has indicated, and which would have paid both of the parties a fair profit, but since defendant's refusal to convey for an unreasonable time, and the depreciation of the value of the property, affiant is not willing now to exceed the strict letter of the contract with reference to the mode and manner of reimbursing the said defendant for the original purchase price thereof. Wherefore the complainant prays this court to discharge the order to show cause and dismiss the bill of complaint herein, as prayed for in his motion."

Thereupon the following decree was entered: "This cause coming on to be heard upon the application of the defendant Joseph Swift for leave to withdraw from his answer now on the files of this court paragraphs 13 and 14 thereof, and submit to a decree in plaintiff's favor on such terms as may be found equitable and just, and upon the order granted September 22, 1895, by the judge of this court, requiring the plaintiff or his solicitors to show cause why the defendant should not be allowed to withdraw from his answer said paragraphs 13 and 14 thereof, and this cause be referred to the master in chancery of this court or some special master to be agreed upon between the parties to take testimony and make an accounting between the parties to this suit touching the real property in controversy and the moneys paid out by defendant on account thereof and interest thereon, and the rents, revenues, and returns received by defendant therefrom, and report the same to this court, or such other order be made in the premises as might be meet and according to equity, and the same being now heard before this court upon the petition of Joseph Swift, verified by his solicitor, Edwin Van Cise, upon which said order to show cause was based, and upon the resisting affidavit of the plaintiff Donald A. McPherson, this day submitted and filed, and at the same time the complainant, by his solicitors, filing his motion in this court to dismiss his bill of complaint heretofore filed herein in this case, the complainant, Donald A. McPherson, appearing by his solicitors.

G. C. Moody and E. W. Martin, and the defendant by his solicitor, Edwin Van Cise, and the court having heard the matters in controversy upon the affidavits aforesaid, and the bill of complaint, verified answer, and replication, on file herein, and being fully advised in the premises, it is now ordered that the application of the defendant be and the same is hereby denied, and the order to show cause granted September 26, 1895, be and the same is hereby vacated and discharged. It is further ordered, considered, adjudged, and decreed that this suit and the bill of complaint heretofore filed herein on behalf of the complainant and against the defendant be and the same is hereby dismissed. It is further ordered and adjudged that defendant have and recover of and from the complainant, Donald A. McPherson, the costs of this suit, taxed at $30.30."

Notwithstanding the former action was upon the same claim or demand, it is not a bar to the present action, unless the former decree was rendered on the merits. Selbie v. Graham, 18 S. D. 365, 100 N. W. 755; Dewey v. Feiler, 11 S. D. 632, 80 N. W. 130; 24 Am. & Eng. Ency. Law, 794. A voluntary dismissal by the plaintiff is not a bar, especially if expressed to be without prejudice. But the mere fact that the dismissal is not expressed to be "without prejudice" does not necessarily establish that the dismissal was a decision on the merits. 24 Am. & Eng. Ency. Law, 805, 806. Though it is never permissible to introduce parol or other extrinsic evidence to vary or contradict a judicial record, where the record does not on its face show the precise question determined, or in other respects leaves any matter open to doubt, parol or other extrinsic evidence, which is not in conflict with the record, may be introduced to aid and explain it by showing the precise questions which were determined, or that certain questions were not passed upon, or otherwise clear up any doubts which might exist. Id. 193. In this instance we think the record shows on its face that there was no adjudication on the merits. If, however, this be not so, it is clear that the contrary does not appear, and the the court below erred in excluding parol evidence offered by the plaintiff to prove that there was not, in fact, any determination of

the issues involved. . Either view entitles the plaintiff to a new trial so far as the defense of res adjudicata is concerned.

The contention that the record in the former action discloses a retraxit which precludes the plaintiff from maintaining the present action is not tenable, even if it be assumed that anything of the sort is sanctioned by the rules of practice prevailing in this jurisdiction. At common law a retraxit is a voluntary acknowledgment that the plaintiff has no cause of action, and therefore will not proceed further, made in open court by the plaintiff in person. 18 Ency. Pl. & Pr. 898. Though the return to the order to show cause was verified by the plaintiff, there is nothing in the record to indicate that it was filed by the plaintiff in person, nor does it disclose an acknowledgment on his part that he had no cause of action. On the contrary, the reasons assigned therein for declining defendant's offer impliedly assert the existence of his alleged cause of action, and are not in the slightest degree inconsistent with an intention to further litigate his rights. The offer in plaintiff's complaint to pay a certain sum in consideration of having his claim to an undivided one-half interest in the remaining property recognized was not an essential element of his cause of action. He was, if the other allegations of his complaint were true, entitled to an accounting without any such offer or previous tender, and the withdrawal of the offer long after it had been refused was in no sense a renunciation of his right to insist upon an accounting.

What has been said regarding the alleged retraxit applies with equal force to the contention that "the acts and declaration of the plaintiff in procuring the decree of February 22, 1896, in the former suit, estop him from maintaining this action for the same relief he sought in that, and which he there asked and induced the court to deny." There is no conflict between the plaintiff's position in the former and present action. He did not "ask and induce the court to deny" the relief sought by him in the former action. He merely declined to accept the defendant's offer, and elected to withdraw his action, which he had a perfect right to do; the defendant not having pleaded a counterclaim. Moreover, the position of the defendant was not prejudiced. He was in possession of the property and its proceeds. If he desired a termination of

his trust relation to the property, he should have instituted an
action in equity for that purpose. The plaintiff is not estopped by
his conduct. ·For the same reason he is not chargeable with such
laches as should preclude him from maintaining the present action.
It is alleged in the complaint and denied in the answer (a material
issue upon which no finding was made) that the plaintiff paid
$5,005 for 'Miller's interest in the partnership property. If he did
so, he paid a substantial price for a substantial right, and no rea-
son appears why such right should not be enforced, unless the
plaintiff's cause of ·action be barred by some statute of limitation.
Clearly this is not an action on the contract embraced by the pro-
visions of the six-year limitation. Rev. Code Civ. Proc. § 60. It
is an action in equity to ascertain and recover a deceased partner's
interest in the ultimate distribution of partnership assets. Such
assets, as between the defendant and the successor of his deceased
partner, must be regarded as personal property held by the de-
fendant in trust for the purpose of distribution according to the
equitable rules governing such property. It is therefore entirely
clear that the limitation upon actions for the recovery or possession
of real property, based on adverse possession or payment of taxes
under color of title, have no application. The action is one for
relief not specially provided for, and must have been commenced
within ten years after the couse of action accrued. Id. 66. A
cause of action does not accrue until the party owning it is en-
titled to begin and prosecute an action thereon. It accrues at the
moment when he has a legal right to sue on it, and not earlier.
19 Am. & Eng. Ency. Law, 193. When the right of action to sue
for the settlement of partnership affairs accrues, so as to set the
statute of limitations in motion, depends upon circumstances, and
cannot be held as a matter of law to arise at the date of the dis-
solution, or to be carried back by relation to that date. Riddle v.
Whitehill, 135 U. S. 621, 10 Sup. Ct.. 924. Upon the dissolution
of the partnership in this case, by the death of Miller, Swift, as
surviving partner, succeeded to all the partnership property, wheth-
er real or personal, in trust for the purpose of liquidation. Rev.
Civ. Code, § 1761. Miller's personal representative, until otherwise
informed, was ·justified in presuming that such trust was being

faithfully performed, and neither he nor his successor in interest was entitled to sue for a settlement of the partnership affairs before making a demand or receiving notice of the trustee's renunciation of his trust. The following statement appears in the decision of the Circuit Court as a finding of fact: "Upon his death the defendant Swift appointed A. W. Coe his agent to collect the rents and attend to the care and management of the property, and has retained him since. Swift at once upon Miller's death asserted in good faith and under the advice of counsel learned in the law, and has since continued so to assert, that he was the sole owner of the property, that, if Miller had any interest in it, it terminated with his death, and said Swift has also since the date of said Miller's death denied that the estate of Miller had any interest whatever in said real property, and has all the time asserted an ownership and possession exclusive in himself and adverse to the estate to the whole of such real property, all this to the knowledge of the administrator, William Selbie, appointed June 1, 1892, and of the plaintiff, all the time a resident of Deadwood, Lawrence county, and familiar with defendant's possession and claim of title." These facts and conclusions do not support the contention that the statute of limitations began to run upon Miller's death. The employment of a resident agent to collect rents and care for the property does not indicate an intention to apply the rents so collected otherwise than for the purposes of liquidation. It was Swift's duty as a surviving partner to employ an agent to care for the property, if he was unable to care for it himself. Where and to whom did he assert that he was the sole owner of the property and that Miller's interest terminated with his death? Manifestly not to the administrator of Miller's estate prior to June 1, 1892, because there was none before that time. Assuming that notice of renunciation to plaintiff prior to his acquisition of Miller's interest would have set the statute running, it does not affirmatively appear that he had such notice, and certainly it would be unreasonable to infer the existence of such notice before he acquired any interest in the property. After Miller's death there was, so far as the decision discloses, no representative of his estate who could have demanded a settlement or to whom notice of renunciation

could have been given before the appointment of Selbie. There-
fore no right of action accrued prior to June 1, 1892, and the
present action, as found by the trial court, was begun June 18,
1901, less than 10 years later.

None of the affirmative defenses having been established, the
failure to find whether the plaintiff acquired Miller's interest and
to make an accounting, the failure to find upon all the material
issues presented by the pleading was prejudicial error, or, if it be
assumed, as contended by respondent, that the only question prop-
erly presented by the record is whether the findings of fact sustain
the conclusions of the circuit court, it must be held that they are
insufficient for that purpose.

The judgment and order appealed from are reversed.