HELEN E. STOKES, Plaintiff, *v.* WILLIAM E. D. STOKES and Others, Defendants.

Supreme Court, New York Special Term, July, 1922.

Dower — when wife joining with husband in executing a deed to a corporation, the stock of which is entirely owned by her husband, does not thereby release her inchoate right of dower in the real estate conveyed to the corporation — fraud — husband and wife — evidence — equity.

Within three months of the marriage between defendant S. and the plaintiff the defendant S. induced plaintiff, his wife, to join with him in executing a deed of forty-odd pieces of valuable real estate to a corporation, the entire stock of which was owned or controlled by him. The deed was not recorded until eight years after its execution and was never out of the possession of said defendant.

Plaintiff contends that the deed was without consideration, was secured by fraud, coercion, suppression of facts, undue influence and that a wife cannot release dower to her husband. Defendant S. sets up three separate defenses; an antenuptial agreement, laches, and the Statute of Limitations. The antenuptial agreement claimed by defendant to be in writing was not produced nor its nonproduction properly accounted for. Plaintiff denies that she ever executed the alleged agreement. *Held*, that the evidence did not establish an antenuptial agreement; that while a corporation is ordinarily to be considered a separate entity a court of equity should not be estopped by a mere legal fiction; that a wife

may not release to her husband her inchoate right of dower and that the deed to the corporation was a mere subterfuge and did not release plaintiff's inchoate right of dower; that the defenses of laches and the Statute of Limitations are without foundation as plaintiff did not ascertain that the deed in question purported to transfer her right of dower until it was recorded and that she brought her action promptly thereafter to set it aside. *Held*, further, that the action was not premature as equity will protect such a right whenever threatened and the plaintiff is entitled to the relief she asks for.

ACTION to set aside two deeds.

*Guggenheimer, Untermyer & Marshall* (*Samuel Untermyer, Irwin Untermyer* and *Lawrence A. Steinhardt*, of counsel), for plaintiff.

*I. Gainsburg* (*I. Maurice Wormser, I. Gainsburg* and *Milton S. Cohn*, of counsel), for defendants.

COHALAN, J. This action is brought to set aside two deeds by the defendant Stokes to the defendant Mervyn Realty Company, in which the plaintiff joined. The plaintiff contends that these deeds were without consideration; that their execution by her was secured by fraud, coercion, suppression of the facts and undue influence; that a wife may not release her dower to her husband, and that thus the procuring of her signature to these deeds was for the purpose of defrauding her of her inchoate right of dower in the property conveyed.

The defendant in addition to general denials sets up three separate defenses: *First*, that the plaintiff and defendant Stokes had entered into an antenuptial agreement wherein and whereby they promised to marry one another, the husband to give to the wife for her personal and exclusive use $500 per month so long as she lived with him as his wife and she, on her part, to join with him, upon his demand, in the execution and delivery of conveyances of his real estate to the corporation which he then contemplated forming; *second*, the plea of laches, and *third*, the Statute of Limitations.

The deeds of November 13, 1911, and November 8, 1916, signed by plaintiff, but given to *bona fide* purchasers, are not included in the present action.

The main questions here arise with relation to Exhibit A — the deed dated May 17, 1911, to the defendant corporation, transferring to it forty-odd pieces of valuable real estate.

Was this instrument executed willingly and with knowledge on the part of the plaintiff of its contents or purport? Was it executed in compliance with the alleged antenuptial agreement? Was its execution the result of coercion, duress or suppression of the facts? Were the organization of the defendant company and the execution of the deeds to it parts of a scheme whereby the plaintiff was to be

Supreme Court, July, 1922.            [Vol. 119

deprived of her inchoate right in defendant's real estate? These are the main points in this phase of this acrimonious contest between husband and wife.

The parties intermarried on February 11, 1911. The defendant claims that the marriage proposal came from the plaintiff; that he accepted it only upon condition that she would enter into an agreement to release her inchoate dower rights in his real estate to a corporation he was to form whenever he would require her to do so, while he on his part, in addition to marrying her, would pay her $500 a month for her personal and exclusive use so long as they continued to live together as man and wife. At the trial this agreement, said by the defendant to have been in writing — and to have been drawn by himself — was not produced nor was its non-production, if it ever existed, properly accounted for. Whether or not there ever was such an agreement is the real crux of the case. The defendant says he does not know if he destroyed it or whether it is among his many scattered papers. His attorneys claim that, as it was an executed agreement, its existence at this time and its non-production are immaterial. In this I differ with them. It was material to know if there was such a paper. When one considers the defendant's story of his desire to protect himself from any dower claim under his second marriage, it seems improbable, if there were such an agreement, that the defendant did not keep it safely. Whether we consider it as executed or not, the various steps leading up to the alleged agreement; the recital of defendant's visits to the title company to see or procure a copy of the release of dower from his former wife to be used by him in drawing the antenuptial agreement; his story that the agreement, which he by his words and actions held to be very important to him, was drafted and prepared not by the attorney whom he then had under an annual retainer and who at the time was arranging for the incorporation of the defendant company — the company referred to in the claimed agreement — but by himself; the further statement that, immediately after its execution by the plaintiff in duplicate, he took the plaintiff's copy from her — all seem improbable. The impression that they leave is that there never was any such agreement made or executed. Practically the sole testimony covering this essential point was given by the defendant himself. It is true there was an attempt to show the existence of the agreement by the defendant's former attorney, but that testimony does not change my view. The plaintiff unequivocally denies that she ever signed the alleged agreement. She says there was some talk before the marriage of his giving her a $500 allowance, but this alone does not tend to sustain the defendant's contention.

It might well be that upon this conversation the defendant built his story of the antenuptial agreement. If the defendant were anxious to avoid future marital trouble with regard to his real estate, it seems hardly possible, with his large experience of life, that he would have depended upon his own ability to draw so important an agreement. I have gone over the evidence and the briefs of the learned counsel very carefully and I see nothing upon which to base a holding that an antenuptial agreement ever existed.

A review of the testimony of both sides is very interesting as to man's memory of events of a few years past. Here we are continually faced with clear-cut denials and contradictions in the strongest of terms. Throughout there appears an undercurrent of intent on the part of the defendant that the plaintiff was not to have any inchoate right of dower in his real estate.

With no antenuptial agreement from which one might have a starting point for the acts and occurrences that followed, then whether or not the defendant's desire to have the property free of plaintiff's inchoate right of dower was willingly complied with by her is the main question left to be considered. An answer to this depends largely upon the early history of the married lives of this couple as presented in the testimony and the circumstances attendant upon the execution of the deeds and the relationship of the parties to one another and to the corporation.

Exhibit A was executed within three months after the marriage. It appears that on the morning of May 17, 1911, while the plaintiff was still in bed, the defendant came to her and had her sign the deed in question. This deed was to the defendant corporation — the entire stock of which was at all times owned or controlled by the defendant Stokes. The deed was not recorded then, but, instead, remained in the defendant's possession for eight years. When the storm clouds came between the parties the deed, as is shown by the resolutions of the board of directors of the defendant corporation, was delivered to and accepted by that company.

It is an elementary principle that a wife may not release to her husband her inchoate right of dower. She may enter into an antenuptial agreement covering the release of dower, but she may not release to him directly. May she by joining in a deed to a corporation, the stock of which is entirely owned by the husband, release that dower right? A corporation is ordinarily to be considered a separate entity, but when I consider all the circumstances before me — the claim of an antenuptial agreement and the evidence introduced to sustain that claim; the non-production of the agreement; the withholding of the deed to the corporation by defendant

Stokes for over eight years; his possession of it during all that time; the facts attendant upon the execution of the deeds, as evidenced by the oral and documentary evidence — I do not believe a court of equity should be estopped by a mere legal fiction of "entity." If a conveyance of property by a husband even in contemplation of marriage is *bona fide* and no right is reserved to him, then, though made to defeat the claim of the wife, it will be good against her. But if it is a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks to do away with the right of inchoate dower, then such an instrument will be ineffectual against her, and as the court said in *Hays* v. *Henry*, 1 Md. Ch. 337: "One of the badges of fraud in such cases is the retention of the possession of the property by the husband, after the transfer of the tit'e or keeping the deed in his hands after its execution."

Following this reasoning, I have arrived at the belief that the deeds to the corporation were a mere subterfuge and in no way released the plaintiff's inchoate right of dower. In the disposition of this matter I have taken into consideration the confidential relationship existing between the plaintiff and defendant Stokes; the experience and business knowledge had by the respective parties, and there is no question in my mind but that the dominant position throughout was occupied by the defendant Stokes. The evidence fully sustains the claim that this defendant controlled her actions, at least in the early days of their marriage, and that in signing the deeds to the corporation she did so under his influence and had no knowledge that she was being called upon to release forever every right she had in the property. The letter to her mother and her diary show this. The testimony on behalf of the defendant does not weaken that proof. The letter shows that she had grave misgivings as to what she had signed. That she did not think she was signing away her inchoate dower rights is apparent when we consider the circumstances and what happened at the meeting between her stepfather and the defendant Stokes where it would appear the stepfather was led to believe that she had not released any rights in the real estate. I think the testimony clearly shows that the plaintiff from the date of the letter in question was continually seeking knowledge as to what the paper was that she had signed — that is, what its effect was and whether or not she had transferred any of her rights by it. Her repeated questions to the defendant and his attorney as to the nature of the paper brought no response, or at least nothing but evasion. The deed was unrecorded and the only parties from whom she could get any information of what it was did not give

it to her.   When the deed was placed upon record she commenced her action.   The defendant raises here the questions of laches and the Statute of Limitations and also that the action is premature. These claims are without foundation.   The plaintiff as soon as she ascertained that the deeds in question purported to transfer her inchoate dower rights — and this was not until the recording of the deeds, eight years after the execution of the instrument and when she had ascertained to a certainty, in her mind at least, that she had been defrauded and influenced into signing something that she never intended to do — acted promptly.

On the question of whether the action was premature or not it is well to note that an inchoate right of dower is a valuable subsisting, separate and distinct interest which is entitled to protection, and for which the wife may maintain a separate action. The interest attaches to the land, and she may protect it in an action somewhat similar and in analogy to one to remove a cloud upon title.   Equity will protect such a right whenever threatened. It will always restore property rights when fraud, duress or compulsion has intervened.   In the present case if the hands of equity were to be restrained there would be nothing to prevent this corporation, in whose name the record title now stands, from conveying to an innocent vendee the fee title of the real estate, free of any inchoate right of the plaintiff.   To hold that this court may not act to protect an inchoate right, but may only act when a dower interest is in question, would be to hold that equity may not step in to do an equitable thing.   Here the plaintiff is asking equity to protect her inchoate right of dower, and this she has the right to do.

Great weight is placed upon the fact of the execution of the instrument in question.   It is true that an acknowledgment furnishes evidence of regularity and should not be lightly considered.   It is also true that this court should take into account all the circumstances attendant upon the execution; the relationship of the parties; the fact that the plaintiff was not represented by an attorney; that defendant was so represented; the claim of the defendant that the instrument was but the carrying out of the antenuptial agreement, which has not been produced by defendant, and the very existence of which is denied by plaintiff.   All these things the court should and will consider in passing upon the question of regularity and validity.   Again, where the relationship of the parties is such as here, and where the dominant party has secured an advantage or benefit to himself over the servient party, the court will scrutinize closely any instrument that is questioned and will look to the party deriving the advantage for clear evidence

**174** SPENCER, KELLOGG & SONS, INC., *v.* D., L. & W. R. R. Co.

Supreme Court, July, 1922. [Vol. 119

showing that the transaction was fully understood by the servient party; that there was fairness between the parties; that no deception, fraud or coercion was practiced; that there was no suppression of the facts; that everything was fair, open, voluntary and well understood by the servient party. This I have done here, and, after a careful review of all the facts, I believe the plaintiff is entitled to the relief she asks for.

I take this opportunity of expressing my appreciation to the learned counsel on both sides for the excellent manner in which the facts and the law in this long and bitterly contested case were presented by them, both upon the trial and in the briefs filed with me, saving as they did, a great amount of work on the part of this court and helping greatly in the examination and study of the interesting and unusual questions involved.

Judgment for plaintiff. Submit accordingly.

Judgment accordingly.