## Johnson v. Fetter, et al.

(Decided June 1, 1928.)

### Appeal from Boyd Circuit Court.

1. Partnership.—In suit against estate of deceased partner for partnership settlement and accounting and to set aside settlement agreements, agreement whereby surviving partner accepted speci-

fied credit in settlement for all services and commissions on lands and minerals purchased and sold for corporation, covering "all demands of any kind . . . against them," held to include services rendered in connection with all conveyances which went into interests of deceased.

2. Partnership.—Contract providing for purchase and sale of mineral lands through corporation and for division of profits, one-fourth to each, with provision that two of members should not be liable for losses or compensation for personal services, did not create general partnership, bringing within its scope mineral rights which deceased partner had subsequently acquired in individual capacity.

3. Limitation of Actions.—In action by surviving partner against estate of deceased partner for settlement and for cancellation of previous settlement agreement on ground of fraud, statute of limitations was available as defense in bar of alleged fraud, which was not merely a collateral matter.

4. Limitation of Actions.—Settlement between partners, whereby one of partners was credited with specific amount in full settlement of all demands for services rendered in connection with purchase and sale of mineral lands, if fraudulently procured, had legal effect of dissolving partnership and putting in motion limitations applicable to actions for fraud, under Ky. Stats., secs. 2515, 2519.

5. Limitation of Actions.—One claiming cause of action for fraud which is barred after 5 years under Ky. Stats., sec. 2515, may not have period extended to 10 years under section 2519 on ground of ignorance of the fraud, where failure to discover it is due to his own failure to exercise diligence.

6. Limitation of Actions.—Defendant's concealment of cause of action for fraud, preventing its discovery by plaintiff, is not available to extend limitation provided for causes of action for fraud by Ky. Stats., secs. 2515, 2519, which provide that no action shall be brought 10 years after time of making contract or the perpetration of the fraud.

7. Partnership.—Duty of one partner to discharge his obligations to his copartner with reference to partnership funds arises from operation of law, and is not founded upon the articles of partnership.

8. Limitation of Actions.—Right of surviving partner to recover from estate of deceased partner by way of settlement of partnership demands held barred after 10 years, under Ky. Stats., sec. 2522, even if cause of action were not otherwise barred as cause of action for fraud, since cause was based on common-law obligation of partner and not on articles of partnership.

9 Limitation of Actions.—Right of action by surviving partner for settlement of partnership affairs, if not barred under Ky. Stats., secs. 2515, 2519, as cause of action for fraud, was not extended beyond 10-year period under section 2522, by deceased partner's alleged concealment of fraud arising from sale of mineral lands through corporation, where surviving partner was present, ac-

cepted settlement, was aware of developments, and failed to exercise diligence.

MOORE & CHILDERS for appellant.

HAGER & STEWART and S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The facts herein referred to and upon which this opinion is based include those that are undisputed, and those found by the trial court to exist and which finding is sufficiently supported by the testimony in the cause to authorize us to accept them as true under the rules of appellate practice prevailing on appeals in equity cases.

John C. C. Mayo was a dreamer, and saw the great possibilities and tremendous outcome of the coal industry in Eastern Kentucky. Following his vision, he conceived the idea of inaugurating development movements, whereby such mineral could be obtained and put upon the market and at the same time realize for its promoters remunerative, but possibly remote, profits.

Prior to December 3, 1900, through his personal efforts and those of others whom he enlisted for the purpose, he had acquired extensive mineral titles in various sections of that part of the state, but not to the full extent of his desires. On that day he entered into a written contract, with one M. D. L. Greer and the appellant, B. F. Johnson, by the terms of which Mayo was to furnish money to Greer and Johnson with which they were to procure, "principally in Floyd, Pike, Letcher, and Knott counties," conveyances of coal-mining rights from the owners, to the Ohio & Big Sandy Land Assocation, a corporation previously organized by Mayo, and in which he was a large stockholder. It was further provided therein that:

"The said property in fee or mineral rights so acquired is to be resold and conveyed by the said Ohio & Big Sandy Land Association, and all profits realized upon such sale, over and above the payments made on account of the first purchase money and the expense incurred by the parties hereto, are to be divided in the proportion following: To John C. C. Mayo, one-half thereof; to B. F. Johnson, one-fourth thereof; and to M. D. L. Greer, one-fourth thereof."

Another stipulation provided that Greer and Johnson were not to be liable for any losses, and no one was to be compensated for personal services. Mayo, by the greatest efforts, advanced small sums of money from time to time, and within less than one year from the date of the contract quite a large amount of mineral titles were obtained by Greer and Johnson, and the purpose of the venture was practically, if not entirely, accomplished by that time.

Some time prior to July 27, 1901, Mayo succeeded in forming a corporation known as Northern Coal & Coke Company, and on that date he entered into a tentative agreement to transfer the mineral titles he held, including those obtained by Greer and Johnson, to the latter corporation, in consideration of one-fifth of its capital stock, and that tentative agreement was carried into full execution on August 17, 1903, at which time conveyances were made to the Northern Coal & Coke Company, and the 1901 agreement was completely performed. On the day prior thereto (August 16, 1903,) the Ohio & Big Sandy Land Association, by Mayo, its president, and appellant, B. F. Johnson, signed and executed another written contract, reading:

"Memorandum of agreement, made March 16, 1903, between Ohio & Big Sandy Land Association, a West Virginia corporation, party of the first part, and B. F. Johnson, party of the second part.

"Whereas, the said B. F. Johnson on December 3, 1900, entered into an agreement with Jno. C. C. Mayo, the latter acting on behalf of the said Ohio & Big Sandy Land Association for the purchase and sale of coal and mineral lands in Floyd, Pike, Letcher, and Knott counties, Kentucky, by the terms of which the said Johnson was to receive a certain portion of the profits realized from the sale of the properties so purchased under said agreement; and whereas various properties have been purchased under said agreement and have been sold to and acquired by Northern Coal & Coke Company; and whereas settlement has not been made between the said B. F. Johnson and said Jno. C. C. Mayo on account of said purchases:

"It is now agreed that the said B. F. Johnson shall receive a commission of forty (40c) per actual acreage as expressed in deed upon all the land that

was purchased by said Ohio & Big Sandy Land Association through the agency of said B. F. Johnson and by said Ohio & Big Sandy Land Association sold to Northern Coal & Coke Company, for which lands the said Northern Coal & Coke Company has obtained deeds or may hereafter obtain deeds; and it is further agreed that the said B. F. Johnson and John C. C. Mayo, president of the Ohio & Big Sandy Land Association, shall agree as to what tracts were purchased through the agency of said B. F. Johnson, upon which the said Johnson shall be entitled to said commission of forty cents per acre.

"This agreement shall be in lieu of the terms of the said agreement of December 3, 1900, in so far as the lands that have been sold to Northern Coal & Coke Company by said Ohio & Big Sandy Land Association are concerned.

"The said party of the first part has this day paid to said B. F. Johnson on account of his said commissions the sum of twenty-five hundred dollars, receipt whereof is hereby acknowledged by said party of the second part.

"This agreement applies only to the lands purchased by said Ohio & Big Sandy Land Association through the agency of said B. F. Johnson that have been sold to said Northern Coal & Coke Company upon which said latter company has obtained deeds, or may obtain deeds."

On the same day they entered into the same character of contract with reference to titles that Johnson had obtained for the Midland Coal & Iron Company and the Mountain Coal & Iron Company.

On August 17, 1903, the date of the conveyance of the mineral interest to the Northern Coal & Coke Company, it agreed therein to assume the obligations to Johnson contained in and growing out of the contract of date December 3, 1900, as modified by the one of March 16, 1903, and it later, and on August 18, 1905, made a settlement with him, and he accepted it as his paymaster in lieu of Mayo or any of the companies for whom he had procured conveyances. That settlement was also in writing, and was in the form of a stated account, wherein Johnson was credited with the amount of $20,000, the agreed compensation and commission that he was to receive under the modified contracts of March 16 and 17,

1903, supra, and, in stating the items and matters for which the credit to Johnson was given, it was said:

"In full for services and disbursements to and for the following named companies and J. C. C. Mayo to date, and in full of commissions on lands and minerals purchased for the following named companies and J. C. C. Mayo, viz.: Ohio & Big Sandy Land Association, Midland Coal & Iron Company, Northern Coal & Coke Company, Mountain Coal & Iron Company, Duncan Coal & Iron Company, Empire Coal & Land Company, Northern Coal, Coke & Iron Company, and Jno. C. C. Mayo, and in settlement and full satisfaction of agreement dated March 16, 1903, between the said Johnson, J. C. C. Mayo, and the Ohio & Big Sandy Land Association relative to commissions in full of all claims to date against said Mayo and said companies or any and all of them, $20,000."

He was then charged with $14,765.89, theretofore paid him by Mayo, or by the companies for which he took conveyances, and the Northern Coal & Coke Company on that date paid him $2,834.10, leaving a balance due him of $2,500, which when paid would complete the $20,000, the total amount of his agreed compensation under the settlement contracts, supra. At the foot of that account Johnson signed this receipt:

"Received Aug. 18th, 1905, of Northern Coal and Coke Company, twenty-eight hundred thirty-four and 11/100 dollars, in full settlement of the above account, except balance of $2,500 as shown above."

On April 27, 1911, a written receipt was executed by Johnson to the Northern Coal & Coke Company, wherein he released and discharged it and a number of other named companies and John C. C. Mayo "from any and all that I have or may have against them, or any of them, from any and all demands of any kind, whatsoever, that I may have against them, or any of them, hereby canceling and discharging the same." He excluded therefrom his claims against some enumerated companies arising, not from the acquisition of mineral titles, but from timber contracts, mostly railroad ties; and, either just prior thereto or closely following that time, Johnson

wrote a letter to the Northern Coal & Coke Company calling its attention to a balance due him under its assumption of the settlement contracts, supra, amounting to in the neighborhood of $1,100, and which amount was promptly paid him.

Mayo died testate and a resident of Johnson county May 10, 1914, and in June, 1915, Greer instituted this action against his widow as executrix of his will for a settlement of the matters due him under what he termed the "partnership" that was formed by the December 3, 1900, contract, and in his petition he alleged that upon a proper settlement Mayo was indebted to him for his one-fourth of the profits as per the terms of that contract in a large sum of money, amounting to, in the neighborhood of, $750,000. He did not sue or attempt to recover from Mrs. Mayo individually and personally as sole devisee of her husband, but only to recover against the estate of John C. C. Mayo, and he made Johnson a defendant in the cause, presumptively because the latter, for some reason, declined to join him as plaintiff.

In July or August, 1915, Johnson filed his answer, which he made a cross-petition against Mrs. Mayo in her fiduciary capacity only, and he sought the same relief against the estate of Mayo, and in his pleading he made these averments:

"The defendant states that the said John C. C. Mayo, during the year 1903, promised and agreed with this defendant to make a settlement with this defendant of the various items of partnership business; that this defendant had no record and no means of acquiring knowledge or information as to the amount received by the said John C. C. Mayo, or as to the amount expended by him on behalf of said partnership; that the said John C. C. Mayo represented to the defendant, and the defendant in good faith believed at the time, that the entire profits made by the said partnership did not exceed $80,000, and the said John C. C. Mayo assured defendant that the entire profits of all the partnership ventures were in fact less than $80,000, and, relying upon said representations, the defendant agreed to accept one-fourth of whatever profit the said partnership may have made; and that the Ohio & Big Sandy Land Association or some other corporation, the name of which is unknown to the defendant, paid the defend

ant at various times after 1903 the sum of $20,000, the last payment on which account consisting of $1,150, paid August 31, 1905, and which payments were professed to be made by said corporation on behalf of the said John C. C. Mayo, deceased, and that no other money whatever has been paid to him on account of the profits made by the said partnership.''

He then sought to avoid such settlement transactions by alleging that he was ignorant of the facts and that Mayo and his associated companies knew the facts and concealed them from him and thus practiced a fraud upon him in the procuring of the writings and settlements hereinbefore referred to, and for that reason he sought to eliminate all attempted settlements from the case, but he did not tender or offer to tender to the Northern Coal & Coke Company, who was his final paymaster under the novated contract entered into by it, and whereby it assumed the obligation to settle with him for all services rendered by him with respect to the matters here involved. He then reiterated, in substance, the allegations made by Greer in the latter's original petition, with reference to the large profits eventually and finally realized by Mayo from the fruits of his labor under the original agreement of December 3, 1900, and wound up his pleading by praying for a settlement and a judgment for the amount due him, which he fixed at the same amount as did Greer. Issues were made in the Greer branch of the case, but his action was dismissed by him before final submission, and it will not be necessary to state the issues raised with respect to his contentions.

In response to the cross-petition of appellant Johnson, Mrs. Mayo, as executrix of her husband, denied all of its averments except the making of the contract of December 3, 1900, and denied the amount of mineral acreage that Johnson alleged he had obtained under that agreement, and also denied that there was any amount due him from either Mayo or any of his allied companies to which conveyances may have been obtained by Johnson. Another paragraph pleaded the statute of limitations as a bar to his cause of action as based upon the original contract of December 3, 1900, and also as a bar to the averment of fraud in the procuring of the settlements in avoidance of them.

There were divers and sundy pleadings and amended pleadings, the filing of which extended over a period of three or more years. But in the meantime, and on September 23, 1916, Mrs. Mayo married Dr. S. P. Fetter, which ipso facto vacated her fiduciary position as executrix of her husband's will. However, no notice of her marriage was taken by the parties to the litigation until November 8, 1919, when Mrs. Mayo filed her affidavit developing the fact of her prior marriage, and moved that the action abate because it had not been revived in the name of John E. Buckingham, who was appointed administrator de bonis non of her husband's estate and succeeded her as his personal representative, within twelve months after her marriage, whereby she became ipso facto disqualified. That motion was sustained, but Johnson then filed an amended answer and counterclaim against Buckingham as such personal representative and Mrs. Mayo personally, and sought judgment against her as the sole devisee of her husband, upon the ground that she received assets from his estate in an amount greater than the claim asserted by him and greater than what would he sufficient to dischrage all of Mayo's debts. The pleadings from that time forward were practically duplicated, and, with the evidence taken before the filing of appellant's amended answer and counterclaim, plus that taken afterwards, all of which filled nine volumes of the record, the court, upon final submission, dismissed defendant's answer and counterclaim (the petition of Greer, as we have stated, having been dismissed by him prior thereto) and, to reverse that judgment, Johnson prosecutes this appeal.

A great number of questions are lengthily discussed in briefs of counsel for both sides, among which was a plea to the jurisdiction of the Boyd circuit court, made by counsel for the Mayo estate, but to discuss and determine all of them would unduly lengthen this opinion, and we have concluded to confine it to only the questions hereinafter referred to.

One preliminary question raised was that, even if the settlements should stand, they do not include appellant's right to recover profits on certain mineral conveyances obtained by him and made to Mrs. Mayo and one Mr. Hite, as well as others conveyed to different named parties; but the rendered account made to the Northern Coal & Coke Company on August 18, 1905, is sufficiently

comprehensive to include all services rendered by appellant in the procurement of mineral conveyances that finally went into any of the Mayo interests, including that made to Mrs. Mayo and Mr. Hite. Likewise the receipt of April 27, 1911, supra, covered all companies with which Mayo was associated, and also included any sum due from him personally, and there can be no doubt but that the intention and purpose of those writings were to finally settle, as stated therein, "all demands of any kind whatsoever that I may have against them, or any of them."

Another preliminary contention was that the original contract of December 3, 1900, created, in the language of counsel, "a *general* partnership," and brought within its scope the obtention of mineral rights that Mayo personally had acquired, or might thereafter acquire, by himself individually or through similar services of others whom he might employ for that purpose. But we find no language in that contract that is even remotely susceptible to any such construction, and the conduct of the parties thereafter gives no color whatever to it; but, on the contrary, it clearly indicates that it was never intended by them for Greer and Johnson to be compensated for profits on any titles to mineral interests, except those personally procured by them. Indeed, it is contended by counsel for the estate, that the 1900 contract formed no partnership at all inter se, although it might create one as to third parties, and which contention is by no means entirely unfounded, since it specifically provided that neither Greer nor Johnson was to share any of the losses as between them and Mayo or any of the companies for whom they should procure titles. But, however that might be, for the reasons stated above, we will pursue that question no further.

It is contended by counsel for appellant that there was no plea of the statute of limitations to the original cause of action, and that the only one interposed was to the allegations of fraud in procuring the settlements, supra, and, further, that limitation statutes are not available in bar of such alleged fraud, because the action is not based on the settlements, and the only limitation pleaded by appellees, as contended by appellant, was in avoidance of defensive matters, which is not allowable, and the domestic cases of Louisville Banking Co. v. Buchanan, 117 Ky. 975, 80 S. W. 193, 25 Ky. Law Rep.

2167, 4 Ann. Cas. 929, Eastern Gulf Oil Co. v. Lovelace, 188 Ky. 238, 221 S. W. 544, and Commonwealth v. Middleton, 205 Ky. 570, 266 S. W. 37, are relied on in support of that contention. But an examination of them clearly convinces us that the principle therein announced has no application to the facts of this case. The defenses therein relied on, and to which pleas of limitation in reply were rejected under the doctrine contended for, were matters entirely independent, and not necessarily growing out of the cause of action alleged in the petition. In this case, as we have seen, appellant in his pleading not only sough† a settlement of the alleged partnership business, but, realizing that his settlements stood in his way to obtain that relief, he sought to avoid them and to obtain their cancellation, on the ground that they were procured by fraud, and he thereby made such cancellation a prerequisite to his right of recovery, and as a necessary condition therefor. It therefore became and was an essential part of his cause of action, and which it was incumbent on him to meet before he could arrive at the final goal: i. e., a judgment for the amount he claimed was due him.

But, independently of all that, the plea of limitation was also directed to the original cause of action as well as to the plea of fraud in procuring the settlements. Such plea is found in the latter part of paragraph 2 of reply to Johnson's original answer and cross-petition, and is on page 49 of the record, and it is repeated in the reply to the amended answer and cross-petition filed by Johnson after the suit was revived against Buckingham and Mrs. Mayo, individually, and which is found on page 249 of volume 2 of the record. So that we find that the bar of the statute was interposed (a) to the plea of fraud in procuring the settlements (first injected into the case by Johnson in his original pleading), and also (b) to the original cause of action unaffected by any such settlement; and the first question presented is: Whether the pleaded limitations are available?

In disposing of that question, we will first consider the defense stated in division (a) supra.:

Section 2515 of our present Statutes prescribes, inter alia, that: "An action for relief on the ground of fraud or mistake, . . . shall be commenced within five years next after the cause of action accrued." But, anticipating that the fraud or mistake furnishing the cause of action might be concealed from the litigant relying on it,

thus disabling him from discovering it, the Legislature enacted section 2519 of the same Statutes, in which it is provided that:

"In actions for relief for fraud or mistake (the exact language found in section 2515), or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of the making the contract or the perpetration of the fraud."

Conceding for our immediate purposes that the settlements were fraudulently procured, they clearly had the legal effect of dissolving the partnership, or whatever business relation that the contract of December 3, 1900, created; and Mayo thereafter occupied no trust re lation (generally existing between partners of a going partnership), and no such relation existed between him and appellant so as to toll or suspend the applicable limitation defense to the cause of action. The settlements, whether fraudulently procured or not, were made after the business for which the relationship was formed (be it that of a partnership or whatever it may be termed) was fully completed and its purpose accomplished, and thereafter Mayo acknowledged no claim due from him to his former business associate Johnson, and to whom he, thereby, in effect, said, "I owe you nothing," and which we repeat, effected a final dissolution. Patterson v. Brown, 6 T. B. Mon. 10; Taylor's Adm'r v. Morrison's Ex'rs, 7 Dana, 241; 17 R. C. L. 805, sec. 172; 20 R. C. L. 1016, sec. 259; 30 Cyc. 718-729; Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554; and McPherson v. Swift, 22 S. D. 165, 116 N. W. 76, 133 Am. St. Rep. 907. There are no opinions or texts to the contrary; and, following that rule, all mistakes or fraud, furnishing to appellant a cause of action against Mayo, occurred at the dates of those settlements, and, if any such were known to appellant at that time, he had only 5 years within which to bring his action for relief therefrom. If, however, he did not know of the existence of such alleged fraud, he was given by section 2519 of our Statutes until the expiration of 10 years therefrom within which to discover it, and, if he did so within that time and brought his action within that period, he would not be barred, unless his failure to discover the truth was due to some

derelictions on his part in failing to make reasonable efforts to do so, since one so situated may not sit supinely by and exercise no diligence to discover the wrong perpetrated upon him. He must bestir himself, and, if he could have discovered the fraud or mistake by the exercise of reasonable diligence, it is his duty to do so. Such is the universal requirement, and it has been adopted and applied by this court in numerous cases to be found in notes to section 2519 in the 1922 Edition of Carroll's Kentucky Statutes.

But appellant's counsel invokes the principle that, where the one relying on limitations has himself so completely concealed the cause of action that his adversary could not discover it, it will not be deemed to have accrued until the discovery is made, and he relies on the case of Falls Branch Coal Co. v. Proctor Coal Co., 203 Ky. 307, 262 S. W. 301, 37 A. L. R. 1172, and other like ones decided by this court. But that doctrine, howsoever well settled it might be, has no application to the limitation provided for in section 2519, supra, of our Statutes. That section fixes a final period of ten years beyond and after which "no such action shall be brought," regardless of what contributed to or produced the failure to discover the fraud or mistake, or by whomsoever the concealment was procured. We have, in substance and effect, so held in a great number of cases, and in the case of Graham's Adm'r v. English, 160 Ky. 375, 169 S. W. 836, the precise point was thus disposed of by us:

"It doubtless happens that in some cases the fraudulent contract is kept secret or at least is of such a nature as that its discovery is not practicable (i. e., could not be discovered by the exercise of ordinary diligence) until after the 10 years have run. But, however this may be, this old statute furnishes a peremptory bar for relief after the expiration of 10 years from the making of the contract or the perpetration of the fraud."

This action by Johnson was not commenced until about 12½ years after the settlements were made and the alleged fraud perpetrated, and which was at the time he filed his answer and cross-petition in the original action brought by Greer. If, however, we should calculate from the period when the action was what might be termed

as revived, then he did not proceed for more than 16 years after the settlements were made. So that in either event the statute bars his right to avoid the settlements on the ground of fraud or mistake.

But, if we should eliminate from the case entirely the settlements, supra, and consider only the right to maintain the action as based on the partnership or other relation that existed between the parties, as contained in division (b), then appellant would fare no better. As we have seen, whatever other effect the settlements had, they did work a dissolution, and removed all obstacles in the way of the running of limitations after that time. There is no specific statutory limitation within which a settlement suit, such as this, shall be brought; but section 2522 of our present Statutes says:

> "An action for relief not provided for in this or some other chapter, can only be commenced within ten years after the cause of action accrued."

It might be insisted that, inasmuch as the articles of partnership were in writing, the 15-year limitation would apply to a suit to settle the partnership affairs arising thereunder, but we cannot agree thereto. The articles of partnership only fixed the terms thereof, while the duty of one partner to discharge his obligations to his copartner with reference to the partnership funds is one arising by operation of law, and is not one founded on the articles of partnership, and especially so where no mention thereof is made in the articles, as is true here.

The Gilmore and the McPherson cases, supra, were each settlement suits between partners. In the state of New York, where the first one arose, section 388 of the Statutes (Code Civil Proc.) of that state was practically the same as section 2522, supra, of our Statutes, and the Court of Appeals of that state applied that section of the limitation statutes. The same was true in the McPherson case from South Dakota. Section 66 of the Revised Code of Civil Procedure of that state was similar to the same section of our Statutes, and the court, in applying the defense of limitations, applied that section, saying:

> "The action is one for relief not specially provided for, and must have been commenced within 10 years after the cause of action accrued. Rev. Code Civ. Prac., sec. 66."

The articles of partnership in that case were in writing, as they were here, but, notwithstanding that fact, the general statute of limitations, where no other specific one was provided, was applied. We have seen that the action in this case was not brought within the limitation of 10 years, under our similar statute, and it must be held as barred unless some legal reason exists for suspending the statute.

At this point, therefore, it is again insisted that Mayo concealed the fraud in such a manner as to absolutely prevent appellant from discovering it, and for that reason, under the doctrine, supra, the running of the statute was suspended, and the bar should not apply. The allegations of the fraud and also of the concealment were each denied. The court necessarily found that neither one existed, and we are not prepared to say that such finding was against the preponderance of the evidence, or that there was any evidence to suport the affirmative contention by appellant; and which brings us to the alleged inability of appellant to discover the fraud so as to postpone the running of the statute of limitations. However, what we have hereinbefore said with reference to section 2519, supra, of our Statute, also applies to this phase of the case. As above intimated, we do not find from the record that appellant was unable to discover the facts which he now claims were concealed from him and which constituted the fraud relied on, or that they were concealed by Mayo at all; or, if so, that it was done in such a manner as to prevent appellant from discovering them. The mineral rights acquired by him were conveyed to the Northern Coal & Coke Company, and were recited in the recorded deed to it. He was a stockholder in that company, and lived in the same town where its principal Kentucky office was located; he acknowledged from time to time its indebtedness to him, and eventually accepted a final adjustment of his claim by it, and received from it his final payment. He was aware of all the developments that followed his procurement of the mineral rights under the 1900 agreement, and not one word of complaint was ever uttered by him until more than a year after Mayo's death. It is true that the latter realized large profits from those rights, but no one knew at the time the settlements were made what those profits, if any, would finally turn out to be. It was a speculation and in one sense a gamble, and Mayo was willing to

take the chances. Johnson, and perhaps Greer, were anxious for a settlement whereby they would receive ready cash, and the long delay in seeking an enforced settlement, even were it not barred by limitations, borders closely onto laches that might itself prevent the maintenance of the action.

But, however that may be, we are convinced that appellant was in possession of such facts as, if duly investigated by him, and which it was his duty to do, would have resulted in his discovery of the actual facts long before Mayo died, to say nothing about the delay of more than a year after his death. Having arrived at that conclusion, it becomes unnecessary to discuss or determine any other question presented in the record or argued in briefs.

For the reasons stated, the judgment is affirmed.