## Clore v. Clore.

Oct. 6, 1939.

V. I. Cartwright and Thad Cheatham for appellant.

Frank A. Ropke and Ropke & Ballantine for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appeal is prosecuted from an order dismissing appellant's petition, upon her refusal to plead, after the court had sustained demurrer to her reply to appellee's answer, carrying the same back to her petition and sustaining demurrer thereto. We shall refer to appellee as defendant, and appellant as plaintiff, she on appeal insisting that the court erroneously dismissed her pleading.

James W. Clore and plaintiff were married March 31, 1928, and lived together nine years and three weeks, and until April 21, 1937, the date of testator's death, the defendant, his only son, qualifying as executor. In her petition filed September 15, 1937, she sought to have

the court cancel an alleged ante-nuptial contract on the ground that her execution of same was procured by fraud, deceit and under duress.

Under the terms of the contract, each party in consideration of the approaching marriage waived any and all interest in property which might inure to either by reason of marriage, with the proviso that the contract should not impair any bequest that Mr. Clore might make to the wife.

At the time of the marriage plaintiff was a widow about 42 years of age, and as alleged was "in good health, but without fortune or means of livelihood and having no expectancy." Mr. Clore was a widower 72 years of age, having one son, the defendant. At some undisclosed date plaintiff became Mr. Clore's housekeeper and served as such for "many months." About three months before the marriage, and likewise the date of the contract, Mr. Clore approached the subject of marriage; plaintiff agreed and they became "engaged."

In her pleading she alleges that by way of inducement to marriage, Mr. Clore had promised, in case of his prior death, to make proper provisions for her welfare; to furnish her a "house and a place in which to live, at a cost of not less than $5,000;" that these matters were frequently discussed and the promises made prior to their marriage.

On the morning of March 31, 1928, plaintiff and Mr. Clore left their home (Middletown) at about 8 A. M. and drove to Louisville, going directly to the office of an attorney, who had previously prepared a contract which was presented to plaintiff. She says she did not read it, nor was it read to her. Defendant in answer says it was "explained" to her. She alleges that Mr. Clore told her it would be all right for her to "sign it;" as he would make everything all right for her, and her signing of it "would keep his son Lindsay in good humor toward him;" that due to his insistence and representations and her implicit confidence in Mr. Clore, she (then as Clara Duncan) signed and "mechanically" acknowledged the paper, which she has since his death discovered to be "an ante-marriage agreement." She also says the son had great influence with the father.

She alleges that "the records show that the agreement was at 10 A. M. the same day filed for record in

the office of the county court clerk and was duly recorded in a Deed Book,'' but neither she nor Mr. Clore took it to the recording office. She pleads the failure of consideration, and reiterates that she was ''inveigled'' into signing the paper; that testator did not make known to, but on the contrary, concealed from her, the nature, extent and value of his estate; did not divulge to her the legal effect of the contract, and that she had no advice or opportunity for advice from counsel or friends. She also makes it appear that she was uneducated, inexperienced in business, and that testator was ''a man of affluence, shrewd and experienced in business affairs; a good business man and well educated,'' and ''she yielded to the stronger will, and having confidence in, and respect for him, she executed the contract as she was commanded to do.''

It is alleged that three weeks prior to the marriage, and without her knowledge, testator conveyed to defendant his home farm of 218 acres. This is admitted, but defendant contends that it came to testator by marriage with his, defendant's mother. She also alleges that during the nine years of married life she was a true, obedient and affectionate wife, staying at home, keeping his house in order, and caring for him in a proper manner. She says that in making the alleged contract she was ''kept in the dark, overreached and imposed upon.'' She also pleads that the document was not a recordable instrument.

Testator's will bequeathed her the sum of $2,000. The estate, consisting of personal property, amounted to over $8,000, with no appreciable debts. The will was probated shortly after testator's death, and in defendant's answer it is shown that on May 28, 1937, she received and receipted for $1,800, ''being a partial distribution of the bequest of $2,000, under the will of J. W. Clore.'' Later, in August, 1937, she filed in the county court a renunciation of the will, and elected to take under the laws of descent and distribution. Defendant pleads this acceptance of the sum named as an estoppel against the act of renunciation, but this phase of the case is not discussed, nor passed on by the court. It may be suggested that the plea was not efficacious. Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917.

In a second amended petition, plaintiff, reiterating essential allegations of the former pleadings, says she

had repeatedly asked Mr. Clore "what was the paper she had signed on the morning of their marriage," and he failed and refused to produce same or disclose to her the nature of its contents; that she asked to see the paper, and used her efforts to find the same about the house, but to no avail; and she asserts that she could not have discovered same by the use of any diligence, ordinary or otherwise, and could not and did not discover that she had been defrauded of her rights until the probate of the will, and that she filed her suit within five years of the discovery and within ten years after the execution of the paper. The defendant by answer to the original and amended pleadings, denied the material allegations thereof, and in addition to the plea of estoppel, plead affirmatively the statute of limitations, his contention being that since the contract was entered into on March 21, 1928, and suit not filed until September, 1937, the five year statute of limitations (Kentucky Statutes, Section 2515) applied. Demurrer to plaintiff's reply raised the issue on this point.

There appears in the record an opinion by the chancellor, and we incorporate the same in substance:

"An agreement in consideration of marriage is a recordable instrument. Kentucky Statutes, Section 494 (Section 2128). This agreement was recorded. Any party claiming an agreement to be fraudulent cannot excuse his ignorance of the terms of such if the instrument be recorded. Jennings v. Fain, 226 Ky. 290 [10 S. W. (2d) 1101]; Elkhorn Coal Corporation v. Hite, 225 Ky. 735 [9 S. W. (2d) 1083]. Hence as the terms of the instrument in suit are claimed to have worked the fraud on the widow's marital rights, the five years statute applies here.

"Cases involving fraudulent conveyances do not seem to be in point. When a fraudulent conveyance is involved the transaction on its face may be perfectly regular. The terms of the recorded conveyance may give no information of the fraud; it is the circumstances surrounding the conveyance that may make the conveyance itself fraudulent. The defrauded creditors may be perfectly aware of the terms of the conveyance, and entirely oblivious of the fraud. Not so here, for the widow claims that the minute she saw the antenuptial contract

she realized she had been defrauded." (We find no such plea.) "So, as the contract has been constantly on record, the widow had constructive notice of its terms, and she cannot say that with reasonable diligence she could not have discovered the alleged fraud just as soon as it was perpetrated."

There is no question presented here as to creditors or innocent purchasers. Kentucky Statutes, supra.

It is at once observed that the main issue presented on appeal is whether or not the suit filed by Mrs. Clore is barred by the terms of the five year statute. That statute (Kentucky Statutes, Section 2515) provides in part that:

"An action for relief on the ground of fraud or mistake * * * shall be commenced within five years next after the cause of action accrued."

As the argument is presented, and as the pleadings developed, there is also brought into question Section 2519, Kentucky Statutes, the effect of which is to amplify Section 2515, supra. This section provides:

"In actions for relief for fraud or mistake * * * the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making of the contract or the perpetration of the fraud."

As will be noted supra, the contract in the instant case was made March 31, 1928. Mr. Clore died April 21, 1937. The suit was instituted in September, 1937. Testator's will was probated in April, 1937. So, it will be seen that the suit was brought more than five years after the contract was made, but if it be that the fraud was not discovered, or could not by the exercise of reasonable diligence have been discovered until after the death of Mr. Clore and the probate of his will, as was alleged, then Section 2519, Kentucky Statutes, is applicable. In other words, the conclusion turns on the question as to when Mrs. Clore's cause accrued.

Counsel for appellee contends that the chancellor was correct in his ruling and argues contra to appellant that under the provisions of Section 494, Kentucky Statutes, an ante-nuptial agreement is, as the court held, a recordable instrument, and being so, Mrs. Clore was put upon constructive and actual notice of its terms and con-

ditions from the moment it was recorded or signed, hence, could not be heard to say that she exercised due diligence in effort to fully acquaint herself with its contents, meaning and effect. Reliance is had on this point on cases mentioned in the chancellor's opinion and Johnson v. Fetter, 224 Ky. 788, 7 S. W. (2d) 241, in which cases the principle seems to be established that in seeking to annul a fraudulent contract, the complainant must not only allege, but prove, that he did not discover the fraud within the five year period, but also that he could not have done so by the exercise of ordinary diligence. And further, as stated in the cases supra, that when the *fact* constituting the fraud appears from a public record, required to be kept, and open to the alleged defrauded person, his claimed ignorance of the fraud will not postpone the operation of the statute.

It is also argued, contra to appellant's contention that the plea of limitation may not, under our rules of procedure be raised, in cases where fraud is alleged, by demurrer. We may at once pass this contention by a reference to the most recent case we have found on the subject, Mullins v. Jennings' Guardian, 273 Ky. 68, 115 S. W. (2d) 340, which in turn cites others in which it has been held that since it is the duty of plaintiff to allege, and prove if denied, that such action is not barred, the question of limitations is sufficiently raised by demurrer. In this particular case it is to be noted that the question of limitations was properly raised by answer and reply, to which latter pleading the demurrer was sustained.

Appellant contends that plaintiff's allegations brought her right to maintain the suit, or rather deferred the operation of limitation upon her right, under both sections supra, since she instituted her suit within five years from the discovery of the alleged fraud, and within ten years from the date of the contract.

We note that there is no discussion in either brief for defendant or plaintiff, as to the sufficiency otherwise of plaintiff's petition and amended petitions. Nor does the chancellor conclude in his opinion that plaintiff's pleadings did not state facts essential to a cause of action against defendant. We need not repeat those portions of the pleading which formed the basis of plaintiff's cause. It is sufficient to say that, taking the original and amended petitions together, plaintiff stated

facts sufficiently to show that her cause of action did not accrue until after the probate of the will, when she first came to the conclusion that she had been led into the hurried execution of the alleged ante-marriage contract, under the belief she would be properly provided for in the manner plead, by testator's will. In fact defendant's answer, in part, in speaking of the plans to have plaintiff make a contract, appears to indicate some secrecy in having the contract drawn (previous to the day of the marriage) apparently so as to protect the ''deceased and this defendant from the wiles and schemes of plaintiff.''

Plaintiff's inability to discover the fraud or deceit alleged to have been practiced upon her are such that we are of the opinion that her cause of action accrued within the five years fixed as the limitation by Section 2515, Kentucky Statutes, certainly when Section 2519, Kentucky Statutes is read in connection therewith.

In the case of Tilton v. Tilton, 130 Ky. 281, 113 S. W. 134, 137, 132 Am. St. Rep. 359, a case similar in some aspects to the case in hand, the contract was made in 1875, two months prior to the marriage of the parties. It was acknowledged and recorded. The parties lived together 32 years as husband and wife. After the death of the husband the widow sought to set aside the agreement, and this court reversed a judgment of the lower court upholding the contract, with directions to cancel same.

It is true in the Tilton case, this court had no difficulty in concluding that the contract was unconscionable on its face. The contract here under consideration on its face cannot be thus characterized. It is the pleading of facts and circumstances with relation to its execution, and other facts plead, which indicate that plaintiff was overreached in making this agreement, under alleged promises which were not carried out.

We shall not recite the facts and circumstances relating to and surrounding the Tilton contract, but refer the reader to the opinion. While in that case the question of limitations does not appear to have been raised, we note that the court referred to a suggestion of laches on the part of the appellant and said:

"Lastly it is urged in argument that, after the execution of the contract, appellee had more than two

'months within which to advise herself as to her rights before she entered into her marriage with the judge, and that therefore she must have been satisfied, else she would have made complaint. This argument is without force. The contract had been signed, and passed from 'her, and undoubtedly the same influence which induced her to sign it operated to lull her into silence and acquiescence, not only during the two succeeding months, but during the 32 years which followed. The question is not, was she satisfied? but, was she deceived? It was not until after her husband's death that she realized and understood how cruelly she had been imposed upon and deceived in the execution of this contract, and how helpless and poverty stricken it left her in her old age, after a life of service and devotion.''

In the case of Gieseler v. Remke, 117 W. Va. 430, 185 S. E. 847, 848, a suit by a widow against the personal representative of a deceased husband, it appeared that the plaintiff and Gieseler had entered into an ante-marriage agreement on January 24, 1925, by which, in consideration of $10, and other valuable consideration, the woman waived her dower rights in the husband's property. They were married in February, 1925, and in November of the same year Gieseler abandoned her, and failed and refused to support her. He died in March, 1934. They were never divorced. In a suit to set aside the contract on grounds of fraud, similar in many respects to those urged here, she alleged that the ''other valuable consideration'' mentioned in the contract was to be a future delivery of certain stocks then owned by Gieseler, and that delivery had not been made, nor did his will make any provision for her support, or bequeath to her the shares of stock. The widow in due time renounced the husband's will. The suit was filed March, 1935, more than 10 years after the making of the contract. Laches had been plead by the personal representative, and the lower court held the plea good.

The Supreme Court (W. Va.) in directing the contract cancelled and, incidentally, allowing to the widow support and maintenance during the interval of separation, said:

''In antenuptial agreements a confidential relationship exists between the contracting parties and it is the duty of the prospective husband to fully disclose

the amount of his property and to deal fairly with his prospective bride and to honestly carry out the provisions of the contract. * * * The first knowledge plaintiff had of the fact that her husband had not fully informed her with reference to his property was after the filing of the appraisal. · The allegations in the bill, in view of the foregoing, are sufficient to sustain the pleading on the issue of fraud. . * * * The mere fact that the wife delayed in pressing her claim [for support] in court, due to the peculiar nature of the marriage contract, should not militate against her rights, if the husband's ability to pay has not been changed." See, also, Stokes v. Stokes, 119 Misc. 168, 196 N. Y. S. 184; Morrish v. Morrish, 262 Pa. 192, 105 A. 83; Jones v. McGonigle, 327 Mo. 457, 37 S. W. (2d) 892, 74 A. L. R. 550, which latter notes the Tilton case, supra.

We express the opinion, and so hold, that the pleadings show plaintiff sufficiently stated facts and circumstances which bring her action within the time limit fixed by the statutes.

Being of opinion the chancellor erred in sustaining the demurrers to her petition, the judgment is reversed for proceedings consistent herewith.